FAIR v. MARTIN.

CONTRACTS—ACTIONS—PARTIES PLAINTIFF.

Where a third party worked a farm rented by plaintiff, and had an interest in the proceeds of the crops after the debts were paid, but not in the crops themselves, plaintiff was entitled to bring suit in his own name for the price of produce sold under a contract signed only by the third party, but based on an oral contract between the plaintiff and the purchaser.

Error to Shiawassee; Smith, J. Submitted December 6, 1900. Decided January 29, 1901.

*Assumpsit* by Robert C. Fair against John W. Martin for goods sold and delivered. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*A. L. Chandler* and *A. J. Kellogg*, for appellant.

*Martin V. B. Wixom*, for appellee.

LONG, J. This action was commenced in justice's court to recover from the defendant the value of 102 barrels of apples, which plaintiff claims to have sold him for $1.65 per barrel. The plaintiff had judgment in that court. The defendant appealed to the circuit court, where he prevailed. On the trial there the plaintiff testified as to the contract as follows:

"I had some business relations with him [defendant]

regarding the sale of apples last fall. I had one meeting with him in Durand. Mr. Martin talked with me in Durand about buying the apples, and I asked him what he was paying. He said, '$1.55,' and I told him I had an offer of $1.75 for No. 1 apples, and he told me I would be foolish to sell my No. 1 apples; they would cull out the bulk of the apples; and to hold them, and he would see and try and do better than any one else by me; that he would take everything except cider apples; and I told him I would hold the apples, and talk with him again before I sold them to any one else. So, on October 4th, he called me up by 'phone, and asked what I had done about the apples. * * * I told him I had received an offer of $1.65. * * * 'Well,' he says, 'I will give you $1.65, and if I get them I will hire Covert to pack them.' * * * I told him at that time I would let him have them at $1.65; and, when Mr. Covert came, Mr. Martin called me up again, and said Covert was there, and I told Covert I had sold the apples to Martin, and that I wanted Martin to give him $25 for me to bind the bargain. Covert spoke to Martin. Martin answered back through the telephone, and said that was all right; he would give me $25. I would recognize his voice over the telephone as well as any one. I was acquainted with him. I have talked with him since, and he acknowledged that he was the one I talked with over the 'phone. Covert went in there, and packed the apples. I was to draw the barrels out to the farm, board the packers, and draw the apples back, when they were packed, to Bancroft. Mr. Martin was to furnish the barrels. There were 102 barrels delivered."

It appears further from the plaintiff's testimony that he received, in addition to the $25, the further sum of $8.25, and that those were the only payments made by the defendant on the apples.

The defendant testified that, when he first talked with the plaintiff, he (plaintiff) said: "Ike [meaning Mr. Covert] had an interest in the apples, and he would not want to sell them until he consulted with him." Defendant detailed the conversation with plaintiff as related by plaintiff, except as to the closing of the bargain with the plaintiff at $1.65 per barrel. Defendant testified:

"I told Covert I made the statement what I would give

him. He said he thought it would be satisfactory. He told me to call Dr. Fair up at 8 o'clock the next morning,—that would be about the time I would catch him at home. He said, 'You state to him our bargain, and tell him to meet me at the 'phone at 11 o'clock, and I will be here.' I called him up the next morning, and I said to him, 'Mr. Covert was in here, and made an arrangement about the apples.' I told him I told Mr. Covert I would give him $1.65 for the apples and 12½ cents for packing. I don't think I told him what arrangement I had made with Covert. I told him Covert said he would be in there, and talk with him over the 'phone. Mr. Covert asked me to do this in order to call his attention to it if he was away. About my making arrangements with 'Mr. Covert, he said it would be all right. Covert came in about 11 o'clock that same day. He called up Dr. Fair, turned around, and told me it was all right. After he said it was all right, he drew up a contract."

The contract reads:

"Sold to J. W. Martin my crop of number one packing apples now° on trees, estimated at about 200 barrels; to be hand picked, and delivered at Bancroft, when packed, free of charge. Empty barrels to be hauled to the orchard, and men for packing to be boarded by me free of expense. Paid on contract $25. Price to be as follows: $1.65; 12½ cents for packing.

[Signed]    "I. COVERT."

At the close of the testimony the court directed the verdict in favor of the defendant. The court took the view of the case that Covert had a legal interest in the apples, and the plaintiff could not maintain his suit.

This charge was based upon the cross-examination of plaintiff, in the course of which he stated:

"I know Isaac Covert. He lives on my farm. I don't know as he works the farm on shares. He has an interest in the proceeds after the debts are paid, and so on. He had an interest in the money that would come from the apples after the debts had been paid."

Plaintiff also testified:

"About this arrangement with Mr. Covert, I said he was to have one-third of the proceeds after I paid up his

debts and any obligations I had become responsible for. Mr. Covert did not have a third interest in the apples; he had a third interest in what would come from the apples, to be applied on his account, and the balance turned over to him, if any. I claim now that I reserved the right to say when they were to be sold. When I did sell anything from the farm, he had an interest in the money. I claim he would not have any right of his own accord, without my consent, to sell stuff off the farm; it would be contrary to our agreement."

On redirect examination plaintiff testified:

"I let the farm in my own name. The crops are all in my own name. The deal between me and her [his wife] is simply a money matter after I am through."

The plaintiff's claim was that he rented the farm from his wife for money rent, and that Covert worked for him on the farm, having a share of the money proceeds from the sale of the crops. He testified that Covert had no interest in the crops themselves. There was no testimony in the case disputing this. We think the court was in error in directing a verdict for the defendant. According to the plaintiff's version, Covert was directed by him to close the bargain at $1.65 per barrel with the defendant. The mere fact that Covert signed his own name to the contract could not affect the right of the plaintiff to recover. It was in fact the plaintiff's contract, as he was the legal owner of the apples, and was so understood to be by the defendant at the time of the purchase.

"It is a general rule of the common law that the action must be brought in the name of the party in whom the legal interest is vested, and that the courts will not, in general, take notice of mere equitable titles and rights of action, as contradistinguished from the strict legal title and interest, so as to invest the equitable or merely beneficial claimant with the ability to adopt legal proceedings in his own name." *Forrest* v. *O'Donnell*, 42 Mich. 558 (4 N. W. 259).

According to plaintiff's testimony, Covert had merely an interest in the proceeds of sales of the products of the farm.

Defendant claimed that the apples were defective. That question should have been submitted to the jury.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.