W. E. CALDWELL *et al.* v. N. F. FRAZIER *et al.*

No. 12,596. (68 Pac. 1076.)

SYLLABUS BY THE COURT.

CONTRACTS—*Option to Purchase Realty—Improvements Burned.* An option contract to purchase is but a continuing offer to sell, and conveys no interest in the property. When such a contract is accepted, it takes effect from the date of acceptance, and binds the grantee only to a conveyance of the property in its present condition. If, intervening the offer and acceptance, the improvements thereon are destroyed by fire, equity will not decree a specific performance of the contract with the improvements restored or with an abatement in price equal to the value of the lost improvements.

Caldwell v. Frazier.

Error from Sedgwick district court; D. M. DALE, judge.  Opinion filed May 10, 1902.  Affirmed.

*Thornton W. Sargent,* and *O. A. Keach,* for plaintiffs in error.

*Smyth & Helm,* and *A. L. Redden,* for defendants in error.

The opinion of the court was delivered by

· GREENE, J. :  This is an action in ejectment brought by the defendants in error in the district court of Sedgwick county for the possession of certain real estate described in the petition, situated in the city of Wichita, and known as the Wichita City Mills.  On the 7th day of June, 1898, the plaintiff below, N. F. Frazier, was the owner of a large part of such property and afterward became the owner of the entire property.  On that day he entered into the following lease and contract with plaintiffs in error :

"WICHITA, KAN., June 7, 1898.
"For and in consideration of $1200, to be paid by W. E. Caldwell and F. D. Stevens, as follows : Ten dollars cash, the receipt whereof is hereby acknowledged ;  $90 on August 1, 1898 ; $100 on the 1st of each month following, until the full amount of $1200 is paid, I hereby lease to the said Caldwell and Stevens the following-described property, to wit : Tract (known as the old City Mills), including lot or lots 145 feet east and west on Douglas avenue, extending back to alley, about 150 ( ? ) north and south, together with all buildings, machinery, and scales, for the term of one year from the 1st day of August, 1898 ; said Caldwell and Stevens to have immediate possession of said property and to have the. right to make such changes in the machinery as may be necessary, and to have the right to remove from said property any

buildings or machinery they may have placed on said property.

"For the consideration above named, I hereby agree to give to the said Caldwell and Stevens the option to buy the said described mill property at any time during the life of this lease, at $15,000 ; the said Caldwell and Stevens to return the property at the expiration of lease in as good condition as received, usual wear and tear excepted.      N. F. FRAZIER.

"We hereby accept the conditions of this lease.

W. E. CALDWELL.
F. D. STEVENS."

On the same date the plaintiffs went into possession of the property, under the lease, and occupied the same until July 31, 1899, since which time they have been in possession, claiming to be the owners under their option contract as expressed in the lease.

At the time of the execution of the lease Frazier had this property insured in the sum of $10,000. During the existence of the lease this policy expired, and he had it reinsured for $8500, for his own benefit. On June 20, 1899, a fire occurred, and a great portion of the buildings, machinery and improvements were destroyed. Before the commencement of this action Frazier collected from the insurance company the amount of his policy, $8500, this being the value of the damage he sustained by reason of the fire.

On the 31st day of July, 1899, Caldwell and Stevens offered to pay Frazier $15,000 for the leased property, provided he would place it in the same condition it was just before the fire and at the time of the execution of the lease, and made a good and valid tender of such amount with that condition. At the same time Caldwell and Stevens demanded that Frazier apply $8500, the insurance money collected, on the purchase-price of $15,000, and made a valid tender of $6500, and de-

manded a deed to the property in its then condition; and at the same time they tendered Frazier $6700, and demanded a deed to the property in its then condition. All of these offers were rejected by Frazier. At the time these tenders were made, Caldwell and Stevens served a written notice on Frazier electing to purchase the property described in said lease subject to the conditions substantially as stated above.

When this action was commenced Caldwell and Stevens were in actual possession of the property, claiming to be the owners under the option contract. In their answer they prayed for a specific performance of the contract under some one of their tenders, or, if specific performance should be thought inequitable, then for their damage for a breach of the contract in the sum of $7000. This court is of the opinion that under the facts a specific performance could not be decreed, and that plaintiffs in error were not entitled to recover damages as for a breach of contract.

An option contract conveys no estate or interest in the property. It is but a continuing offer to sell, which may be accepted by the holder thereof, prior to a time usually fixed in the contract, and, like other contracts when accepted, takes effect from the date of its acceptance and not from the date of the offer.

In Warvelle on Vendors, volume 1, page 187, it is said:

"The remarks of the foregoing paragraphs have reference, however, only to bilateral contracts; for an agreement whereby the owner of land merely gives to a prospective vendee the right, option or refusal to purchase at any time in the future, confers upon the party having such option no interest, either legal or equitable, in the land. It is not a contract of sale within any definition of the term, and at best but gives to the option-holder a right to purchase upon

the terms and conditions, if any, specified in the agreement or proposal."

To the same effect are the decisions in *Bras v. Sheffield*, 49 Kan. 702, 31 Pac. 306; *The Boston & Maine Railroad v. Bartlett and another*, 3 Cush. 224; *Edwards v. West*, 7 Ch. Div. 858; *Gilbert & Ives v. Port*, 28 Ohio St. 276.

A contract of purchase passes an immediate interest in the real estate, and the vendor holds the title as trustee for the vendee. This contract takes effect upon its execution. But no such interest or rights arise from an offer to sell, before acceptance by the contemplated purchaser.

When the buildings upon the property in question were destroyed, Caldwell and Stevens had not availed themselves of the privilege under the option agreement; or, in other words, had not accepted the offer of defendant in error. At that time they had acquired no interest in the real estate in controversy or in the property destroyed. Where there exists a contract of sale of real estate, one of the essential elements of which is an agreement on the part of the vendee to purchase, and before the transaction is consummated the vendor dies, or the buildings are destroyed, the vendee may nevertheless have performance of his contract, and the property so destroyed must be restored or he will be allowed an abatement in the price. No authorities, however, can be found that have applied this rule to option contracts, where the property is destroyed prior to an acceptance. The reason obviously is that in the contract of purchase the obligee takes an interest and the contract is an executory one, while in an option contract to purchase the obligee takes no interest, the contract is incompleted, it lacks mutuality until acceptance, and when

accepted it does not relate back to the date of the offer, but has no other effect than if the offer had been made on the day of the acceptance, and the election, when made, is to accept the property as it is on the date of the acceptance.

In *Bras v. Sheffield,* supra, the syllabus reads:

"Where the owner of land leases it for a period of five years at a stipulated annual rental, and the contract of lease contains a stipulation that the renters shall have the right, at the expiration of the lease, to purchase the premises, if they shall so elect, at a fixed price, there is no completed sale, nor do the renters acquire any estate in the land beyond the leasehold interest until they have elected to accept the offer and have paid or tendered the purchase price stipulated in the contract."

In *Boston & Maine Railroad v. Bartlett and another,* supra, the court said:

"It was then but an offer to contract, and the parties making the offer most undoubtedly might have withdrawn it at any time before acceptance.

"But when the offer was accepted, the minds of the parties met, and the contract was completed. There was then the meeting of the minds of the parties, which constitutes and is the definition of a contract. The acceptance by the plaintiffs constituted a sufficient legal consideration for the engagement on the part of the defendants. There was then nothing wanting, in order to perfect a valid contract upon the part of the defendants. It was precisely as if the parties had met at the time of the acceptance and the offer had been made and accepted and the bargain completed at once."

In *Edwards v. West,* 7 Ch. Div. 858, the court said:

"In the first place, it has been said that by the law of England the exercise of the option causes it to relate back to the time of the creation of the option in such a manner as to render the property for this pur-

pose property of the purchaser as from the date of the contract which gave the option ; so that here, although the option was given by a contract made in April, and not exercised until the 28th of September, yet that when it was so exercised, on the 28th of September, it operated retrospectively, and made the property the property of the purchaser as from the month of April preceding, and consequently made the vendor trustee of the fruits of the property for the purchaser. Now, it appears to me that such a conclusion would be highly inconvenient, because it would place a person under the obligations which rest upon a trustee, or make him free from them, by reference to an act which was not performed until a future day ; and the retrospective conversion of a person into a trustee of property is a result eminently inconvenient.  .  .  . According to the view which I conceive to be true, the conversion of property, which means the treating it as belonging to somebody else before it has been actually transferred to that other person, results from a contract which can be specifically enforced ; so that where there is no specific performance of contract possible there is no conversion. It flows in effect from the principle of equity which considers that done which ought to be done, and which the court can compel to be done, and it extends so far back as those circumstances exist, and no further.   In other words, where there is a contract capable of being specifically enforced as from the date of that contract, and neither earlier nor later, the property comprised in the contract is deemed to belong to the purchaser, and the money to be paid is deemed to belong to the vendor, because those two things ought to be done ; but here there is no obligation to do them at any earlier date than that of the contract constituted by the exercise of the option.   The conversion cannot, according to the principle, relate back to an earlier date than the contract which gives rise to it."

Under the circumstances of this case, there was no breach of the option agreement on the part of Frazier in refusing to convey the property with the improve-

ments restored, or in refusing to convey with an abatement in price equal to the value of the lost improvements, and consequently he is not liable in damages as for a breach of contract.

The judgment of the court below is affirmed.

SMITH, CUNNINGHAM, POLLOCK, JJ., concurring.