Submitted on briefs April 25, modified June 6, rehearing denied July 18, rehearing denied September 19, 1922, petition to set aside judgment denied January 30, 1923.

# STRONG ET AL. *v.* MOORE ET AL.

(207 Pac. 179.)

**Vendor and Purchaser—Option Agreement Held to Constitute Contract Between Vendor and Purchaser.**

1.   Though an option given plaintiffs by defendants did not mention the disposal of insurance money in case of a fire before a deed was executed, in view of the fact that it was examined and approved by attorney for plaintiffs and acknowledged before a notary by one of the defendants, it constituted a complete statement of the agreement of defendants.

**Vendor and Purchaser—"Option" Imposes No Obligation to Buy.**

2.   An "option" is a contract by which an owner agrees that another shall have the privilege of buying property at a fixed price and within the time expressly or impliedly prescribed by the writing, and is a continuing offer, and though it gives the optionee the right to buy if he chooses, it does not impose an obligation to buy.

**Vendor and Purchaser—Optionee has No Interest in Land Until He Accepts Option.**

3.   An optionee has nothing except the right to elect to buy and has no interest in land until by his acceptance of the option he transforms the option into a contract of sale and changes his character to that of a vendee, and then his interest dates from the acceptance of the option.

**Vendor and Purchaser—Option Given Without Consideration may be Withdrawn Before Acceptance, but not if Given for Consideration.**

4.   An option given without consideration may be withdrawn before acceptance, but if given for consideration it cannot be with-

2.   Necessity of consideration to support option under seal, see note in 2 A. L. R. 631.

Instrument for purchase of land is a contract or an option, see note in 3 A. L. R. 576.

drawn before the expiration of the prescribed time, without the consent of the optionees.

**Vendor and Purchaser—Acceptance of Option Creates Contract of Sale.**

5. The acceptance of an option by an optionee creates a contract of sale, and his interest in the land dates from his acceptance of the option.

**Vendor and Purchaser—To be Capable of Specific Performance, Acceptance of Option must Conform to Terms of Offer.**

6. In order to effect a contract of sale capable of specific performance, the acceptance of an option must conform with the terms of the offer, and ordinarily must be unequivocal, absolute and unconditional.

**Contracts—Destruction of Large Part of Subject Matter Terminates Contract.**

7. Where from the nature of a contract the parties must have contemplated the continued existence of its subject matter, in the absence of agreement that the subject matter shall exist, the contract is subject to an implied condition that, if the subject matter or a large or important part of it has ceased to exist at the time of performance, each party is discharged from the contract.

**Vendor and Purchaser—Optionee Held not Entitled to Insurance Money on Loss of Buildings by Fire.**

8. Where during the continuance of an option to purchase land a building insured for $34,000 was destroyed by fire, the optionees were not entitled to accept contract and to require the optionors to account for the insurance money.

From Multnomah: John McCourt, Judge.

In Banc.

This is a suit brought by Margaret H. Strong and Kate R. Henderson against Ben H. Moore and Mabel E. Moore to enforce an alleged contract for the sale of land claimed to have been created by the asserted acceptance of an option. In some respects the evidence is contradictory. It will not be necessary to give a detailed account of the testimony of the various witnesses, because after a careful examination of the record of the evidence we are satisfied with

6. Specific performance of optional contracts, see notes in 1 **Ann. Cas.** 990; 12 **Ann. Cas.** 90; Ann. Cas. 1913A, 362.

8. The question as to insurable interest of holder of option on property is discussed in a note in **L. R. A.** 1918A, 393.

the finding of fact made by the trial judge who had the advantage of seeing and hearing the witnesses; and so it is sufficient to say, without further discussion, that we approve the findings of fact made by the trial court.

George W. Brown, Fannie B. Brown and Melville W. Brown owned the west 55 feet of lot 5 and the west 55 feet of the south 8 feet of lot 6 in block 251, in the City of Portland, on which was standing an apartment house known as Elton Court. Emma G. Robinson was authorized by plaintiffs to act "for them in connection with realty transactions." While acting as such agent Emma G. Robinson on June 8, 1920, took in her own name, but for the benefit of the plaintiffs, an option from the Browns. Emma G. Robinson paid the Browns $1,000 for the option. The premises were described in the option thus:

"The following described real property, to wit: The west 55 feet of lot 5 and the west 55 feet of the south 8 feet of lot 6, in block 251 in the City of Portland, Multnomah County, Oregon."

The purchase price was fixed at $36,000

"to be paid as follows: $1,000 cash this day paid as above set out, $10,000 cash on delivery of deed, $25,000 in the form of a promissory note, to be secured by first mortgage upon the above described property, said note and mortgage to be executed and delivered at the time of delivery of deed, and to be dated at that time and to be payable on or before five years after date and to bear interest at the rate of 6% per annum, payable quarter yearly."

The owners agreed to furnish an abstract showing the title free from encumbrance except the second half of taxes for the year 1919. It was provided that if the title

"proves valid and marketable, and the purchaser fails to consummate the purchase within thirty days from date of the approval of title, the $1,000 deposit paid as above set out shall become forfeited and be retained by the said owners."

An abstract was furnished on June 14, 1920, showing the required title. After receiving the abstract, Emma G. Robinson "took up with defendants herein named the matter of securing a loan upon said property sufficient to complete said purchase."

"Said defendants did not procure the loan for the plaintiffs in time to complete the taking up of said option and defendants were unwilling to make said loan, and upon the fourteenth day of July, 1920, plaintiffs, acting through said Emma G. Robinson, their agent, agreed to sell, assign and transfer to defendants all rights conferred upon plaintiffs by said option, in consideration of the agreement made by the defendants to complete said option by complying with all of the terms thereof, (2) the repayment to plaintiffs the sum of One Thousand Dollars, paid to secure said option, and (3) the execution and delivery to plaintiffs of a written option to purchase said real property from defendants on or before January 15, 1921, at a price of $38,500; payable $13,500 cash at the time plaintiffs should elect to purchase the property under the option, and the balance to be paid by assuming a mortgage upon the property for $25,000, due five years after date, bearing interest at six per cent payable semi-annually, which mortgage was to be given by defendants upon completing said option as aforesaid."

The option held by Emma G. Robinson was transferred to the defendants. The Browns agreed to extend this option one day. On July 15, 1920, the Moores exercised the right conferred by the option and paid $10,000 to the Browns, gave their note to the Browns for $25,000 together with a mort-

gage on the real property to secure the note, received a deed from the Browns, and "contemporaneously with said transaction the defendants paid to said Emma G. Robinson the sum of $1,000, the amount which she had paid to" the Browns.

"As a part of the entire transaction, defendants on July 15, 1920, after the defendants had acquired title to said real property," executed and delivered to the plaintiffs an option by the terms of which the plaintiffs were given the

"exclusive right to purchase or sell the following described real property, to wit:

"The west 55 feet of lot 5 and the west 55 feet of the south 8 feet of lot 6 in block 251, in the City of Portland, Multnomah County, State of Oregon, for a period of six months from this date, and for the following amounts of money, to wit: $13,500 cash and assuming and agreeing to pay a note and mortgage this date executed for the sum of $25,000 bearing interest at the rate of 6% per annum."

The Moores agreed to furnish an abstract showing title free from encumbrance except the mortgage for $25,000 and they also agreed

"upon the payment of the sum of $13,500 as hereinbefore provided, that we will execute a full warranty deed to the above-described real property in favor of" the plaintiffs.

The Browns were carrying insurance on the building amounting to $34,000 when on June 8, 1920, they gave the option to Emma G. Robinson, and they continued to carry this insurance until they conveyed to the Moores. The mortgage given by the Moores required

"that the property should be insured against loss by fire to the amount of at least $25,000, and that the indemnity provided by the insurance policies should

be made payable to the mortgagee as his interest
might appear";

and on July 15, 1920, when the Moores purchased
the property they paid to the Browns $230.89, the
amount of the unearned premiums on the insurance
policies, and the policies were thereupon assigned to
the Moores with the loss made payable to the mort-
gagees as their interest might appear.

On August 7, 1920, "a fire totally destroyed the
roof and interior of said building and partially de-
stroyed the walls thereof" and afterwards the in-
surers

"paid to the defendants and said mortgagees as pro-
vided by the terms of the several insurance policies
and said mortgage the sum of $34,000 and thereby
discharged said mortgage of $25,000 upon said prem-
ises given by defendants as aforesaid on or about
July 15, 1920."

On December 16, 1920, the plaintiffs served upon
defendants a writing notifying the defendants that
the plaintiffs elected to exercise the right given by
the option of July 15, 1920, and stating:

"We the undersigned, hereby tender to you $13,-
500 in cash, we to receive from you the following":
An abstract, a warranty deed, containing covenants
of warranty "except as to the first mortgage of
$25,000," and "said B. H. Moore and Mabel E. Moore
to furnish and transfer all their right, title and in-
terest in and to insurance policies covering the im-
provements on the above described real estate upon
which there has been an adjudicated loss found pay-
able of $34,000, we to take said insurance free and
clear from all claims against the same except as to
the rights of said first mortgage hereinabove set
forth. * *

"The buildings upon said property having been
materially damaged by fire during the life of said

option we hereby demand that the sums of money due or to become due under said policies of insurance and the rights thereunder be assigned to us in lieu of the undamaged building, demanding this as our rights under said option and making this as a formal tender in writing of complete performance of all the duties and obligations devolving upon the undersigned under the terms of said option.''

On December 24, 1920, the plaintiffs notified the defendants that on December 27th they would meet the defendants at the place

''where B. H. Moore makes his headquarters,'' to complete ''the taking up of said option''; and, accordingly on December 27th ''the plaintiffs, by and through their attorney, tendered to said defendants $13,500 provided the defendants here would convey said real property to plaintiffs subject to said mortgage of $25,000, and pay to the said plaintiffs the sum of $34,000 received from insurance upon the building upon said property, and that the defendants refused said offer, and said defendants tendered in lieu thereof a deed to the plaintiffs and a mortgage to be executed by said plaintiffs, payable to said defendants in the sum of $25,000.''

In their complaint the plaintiffs allege that they

''offer to pay to said defendants, or to the order of this court, the sum of $13,500, legal tender according to the laws of the state of Oregon, upon the execution and delivery by the defendants of a deed * * together with an accounting for the insurance policies covering said property, or a right to said policies held by said defendants, and full payment to plaintiffs of the moneys received by defendants in said insurance policies.''

The decree of the Circuit Court directed the plaintiffs to pay to the clerk of the court the sum of $13,500 within ten days and that the defendants

should convey the property to the plaintiffs by a warranty deed free from encumbrance.

The plaintiffs appealed and the defendants filed a cross-appeal.        MODIFIED.   REHEARING DENIED.

Appellants appearing in person on the brief.

For respondents there was a brief over the name of *Messrs. Joseph, Haney & Littlefield.*

HARRIS, J.—1. Reduced to brief terms the situation presented by the record is one where Emma G. Robinson by the payment of $1,000 acquired from the Browns an option whereby she could purchase the real property owned by the Browns by paying within a prescribed time the additional sum of $10,000 and giving a note for $25,000 secured by a mortgage on the premises; and, being unable to borrow the funds with which to make the necessary additional payment, she transferred her option to the Moores in consideration of the payment to her of $1,000, the exercise by the Moores of the right to purchase the property from the Browns, and the giving of an option by the Moores to the plaintiffs entitling the latter within six months to purchase the property by paying $13,500 and assuming the payment of the mortgage of $25,000. Neither the option of June 8th nor the one of July 15th speaks of insurance. Both options are silent upon that subject. It is true that there was testimony in behalf of plaintiffs, contradicted, however, by the defendants, indirectly if not directly charging that the Moores agreed to carry insurance for the benefit of the plaintiffs and that the alleged agreement concerning insurance should have been expressed in the option of July 15th; but it is also true that the uncontradicted evidence is that the option of July 15th was submitted to Wilson

T. Hume, the attorney for the plaintiffs, for examination and was approved by him; and, furthermore, this option was acknowledged by Ben H. Moore before Wilson T. Hume as notary public. Furthermore, the complaint does not ask for a reformation of the option. The writing of July 15th must therefore be accepted as a complete statement of the agreement of the Moores. The building was insured for $34,000. The cost of the insurance was paid by the Moores. The land, after the destruction of the building, was valued at $20,000. The policies required the payment of the insurance to the mortgagees as their interest might appear, and the remainder, if any, to the Moores. The building was totally destroyed by fire on August 7, 1920. The insurers paid $34,000, the full amount of the insurance, the Browns receiving the amount of their mortgage and the Moores receiving the balance of the insurance money. The plaintiffs did not accept or attempt to accept the option of July 15th until after the fire. The tender of $13,500 made by the plaintiffs was on each occasion upon the condition that the defendants account for the moneys paid by the insurance companies.

The defendants contend that the tenders made in December, although made within the time allowed by the option, were conditional and not in conformity with the offer contained in the option, and that therefore the plaintiffs are not entitled to any relief whatever. The plaintiffs insist that the insurance money in equity represents the building and must be paid to the plaintiffs in lieu of the building which has been destroyed.

2. The rights and obligations arising out of an option to purchase are to be contrasted rather than merely to be compared with the rights and obliga-

tions arising out of a contract of sale. An option is simply a contract by which an owner agrees that another shall have the privilege of buying his property at a fixed price and within the time expressly or impliedly prescribed by the writing. The optionee is not obliged to buy, although he may, if he chooses, elect to buy. A contract of sale imposes upon the vendee an obligation to buy. An option confers a privilege or right to elect to buy, but it does not impose any obligation to buy: *Fargo* v. *Wade,* 72 Or. 477, 479 (142 Pac. 830, L. R. A. 1915A, 271); *Hanscom* v. *Blanchard,* 117 Me. 501 (105 Atl. 291, 3 A. L. R. 545); *Stelson* v. *Haigler,* 63 Colo. 200 (165 Pac. 265, 3 A. L. R. 550); 27 R. C. L. 334, 336.

3. An option does not pass to the optionee any interest in the land; but a contract of sale does transfer to the vendee an interest in the land; and therefore a person appearing in the character of an optionee possesses nothing except the right to elect to buy, and he has no interest in the land until by his acceptance of the option he transforms the option into a contract of sale and changes his character from that of an optionee to that of a vendee: *Kingsley* v. *Kressly,* 60 Or. 167, 172 (111 Pac. 385, 118 Pac. 678, Ann. Cas. 1913E, 746); *Gamble* v. *Garlock,* 116 Minn. 59 (133 N. W. 175, Ann. Cas. 1913A, 1294).

4. An option is a continuing offer. If the option is without consideration it may be withdrawn before acceptance; but if it was given for a consideration it cannot be withdrawn before the expiration of the prescribed time without the consent of the optionee: *Sprague* v. *Schotte,* 48 Or. 609 (87 Pac. 1046); *Mossie* v. *Cyrus,* 61 Or. 17, 19 (119 Pac. 485, 119 Pac. 624); note in 3 A. L. R. 580.

5. If the optionee accepts the option, the acceptance produces a contract of sale with mutual obligations and remedies: *Sprague* v. *Schotte,* 48 Or. 609 (87 Pac. 1046); *House* v. *Jackson,* 24 Or. 89, 95 (32 Pac. 1027). So long as a person stands in the position of an optionee his rights are those of an optionee, and his rights as a vendee do not come into existence until he occupies the position of a vendee. When by accepting an option a person changes his position from that of an optionee to that of a purchaser, the interest in the land created by the contract of sale dates, in this jurisdiction, from the date of the contract of sale and is not by force of a fiction deemed to date from the date of the option: *Sprague* v. *Schotte,* 48 Or. 609 (87 Pac. 1046). See, also, *Caldwell* v. *Frazier,* 65 Kan, 24 (68 Pac. 1076); *Gilbert & Ives* v. *Port,* 28 Ohio St. 276.

6. In order to effect a contract of sale capable of specific performance, the acceptance of an option must conform with the terms of the offer, and ordinarily must be unequivocal, absolute and unconditional: *Friendly* v. *Elwert,* 57 Or. 599, 610 (105 Pac. 404, 111 Pac. 690, 112 Pac. 1085, Ann. Cas. 1913A, 357); *Wetherby* v. *Griswold,* 75 Or. 468, 474 (147 Pac. 388); *Leadbetter* v. *Price,* 103 Or. 222 (202 Pac. 104, 108); *Clarke* v. *Burr,* 85 Wis. 649 (55 N. W. 401).

Whether or not the tenders relied upon by the plaintiffs constitute such an acceptance as is required by the law depends upon whether the plaintiffs are entitled to an accounting of the insurance money. When the fire occurred the plaintiffs were mere optionees and possessed nothing except a bald right to elect to buy and did not have any legal or equitable interest in the land. However, if for the purposes of discussion it be supposed that a binding

contract of sale was in existence when the fire occurred, it will be found that some courts follow one rule and other courts adhere to a different rule, the difference in the rules resulting from the difference in views as to whether, in the absence of an agreement concerning the matter, the loss in case of fire falls upon the vendor or upon the vendee.

A majority of the courts take the view that by a contract of sale the vendee becomes in equity the owner of the land with the vendor holding the legal title as security for the purchase price with the result that, in the absence of a stipulation upon the subject matter, loss of a building by fire or otherwise without fault on the part of either party falls upon the vendee: *Sewell* v. *Underhill,* 197 N. Y. 168 (90 N. E. 430, 134 Am. St. Rep. 863, 18 Ann. Cas. 795, 17 L. R. A. (N. S.) 233); 27 R. C. L. 556; note in 9 Ann. Cas. 1053. In jurisdictions where the loss of a building caused by accident falls upon the vendee the courts necessarily, in order to be consistent, hold that if the vendor receives insurance money the vendee is entitled in equity as between himself and the vendor to demand that the insurance money be applied on the purchase price or to the restoration of the property: 27 R. C. L. 559.

7. Thirty-seven years ago Oregon adopted and has lately reaffirmed the view that where from the nature of the contract it appears, as it does here, that the parties must from the beginning have contemplated the continued existence of the subject matter of the contract, then, in the absence of an agreement that the subject matter shall exist, the contract is to be construed as subject to an implied condition that, if the subject matter or a large or important part of it has ceased to exist when the time for performance arrives, each party is discharged from the contract,

the vendor from his obligation to convey and the vendee from his obligation to pay; and the vendor can neither recover nor retain any part of the purchase price. In the instant case the premises were to be conveyed for an entire price, and since the building was insured for $34,000 and the land is valued at $20,000, it is manifest that the building was a very large part of the subject matter: *Powell v. Dayton & Sheridan, G. R. R. Co.,* 12 Or. 488 (8 Pac. 544); *Elmore* v. *Stephens-Russell Co.,* 88 Or. 509 (171 Pac. 763); 27 R. C. L. 557. In jurisdictions where this rule discharging both parties prevails we should naturally expect to find the law to be that the vendor, who has paid the insurance premium, is entitled to collect and hold the insurance money without liability to account to the vendee: 27 R. C. L. 560. It is appropriate to state that we are aware of the conclusion reached in *Waller* v. *City of New York Ins. Co.,* 84 Or. 284 (164 Pac. 959, Ann. Cas. 1918C, 139); nor have we overlooked any statement made in the opinion rendered in that case; but the governing facts there were radically different from the controlling facts here.

The general rule observed in most jurisdictions is that if a building is accidentally destroyed while the relation of optionor and optionee exists the loss falls upon the optionor, for the reason that the optionee has no interest, neither legal nor equitable, in the land, and consequently moneys received on an insurance policy held and paid for by the optionor are the absolute property of the optionor and he is not required to account for them to the optionee: *Gamble* v. *Garlock,* 116 Minn. 59 (133 N. W. 175, Ann. Cas. 1913A, 1294); *Caldwell* v. *Frazier,* 65 Kan. 24 (68 Pac. 1076); *Gilbert & Ives* v. *Port,* 28 Ohio St. 276;

*Clark* v. *Burr,* 85 Wis. 649 (55 N. W. 401). James on Option Contracts, § 512. Where there is a contract of sale and the relation of vendor and vendee exists, the courts adhering to the rule that the loss falls upon the vendee and that he may demand that the insurance moneys be applied on the purchase price or to a restoration of the property do so on the theory that in equity the vendee is the owner of the real property; but when the contract is only an option, the reason upon which such rule is based does not exist, and consequently the rule, being without any foundation upon which to stand cannot be applied even in those jurisdictions which apply such rule to contracts of sale. There are a few adjudications like *People St. Ry. Co.* v. *Spencer,* 156 Pa. St. 85 (27 Atl. 113, 36 Am. St. Rep. 22), and *Williams* v. *Lilley,* 67 Conn. 50 (34 Atl. 765, 37 L. R. A. 150), where, because of peculiar and unusual circumstances and notwithstanding the fact that an acceptance of the option did not occur until after the loss, the doctrine of relation was applied so as to make the date of the contract of sale relate back to the date of the option, and thus with the aid of a legal fiction enable it to be said that the vendee was in equity the owner at the time of the loss and on that account entitled to require the vendor to account for the proceeds.

8. In the instant case, however, the loss occurred at a time when the parties stood in the position of optionor and optionee unaffected by any unusual or peculiar circumstances. The writing of July 15, 1920, was a pure option; and even though it be assumed that the tenders relied upon by the plaintiffs constituted such an acceptance as was required to effect a contract of sale, nevertheless such assumed contract of sale would date from the time of such

supposed acceptance and could not relate back to the date of the option: *Sprague* v. *Schotte,* 48 Or. 609, 611 (87 Pac. 1046). Since, therefore, only the relation of optionor and optionee existed at the time of the fire the plaintiffs are not entitled to require the defendants to account for the insurance money even though it be supposed that the defendants would be obliged to account for such money if the relation of vendor and vendee existed. But as already pointed out, under the established rule in this jurisdiction, the destruction of the building discharged the parties from their respective obligations even though it be assumed that they occupied the relation of vendor and vendee. A different question would of course be presented if notwithstanding the loss the plaintiffs had not demanded an accounting of the insurance money and had offered fully to perform. The plaintiffs, however, tendered a conditional performance, and for that reason the option was not transformed into a contract of sale. Whether the plaintiffs occupied the position of a mere optionee or that of a vendee, in either event they must fail. The plaintiff permitted the time fixed in the option to expire without tendering an unqualified performance, and for that reason they are not entitled to specific performance. The decree of the Circuit Court gave to the plaintiffs more than they are entitled to receive. The Circuit Court refused to allow costs to either side and we think that a like order should be made in this court; and so the suit is dismissed without costs to any party in either court.

MODIFIED AND SUIT DISMISSED.

REHEARING DENIED.

Mr. Justice McCOURT took no part in the consideration of this case.