**BROOKS v. YAWKEY et al.**

No. 4645.

United States Court of Appeals,
First Circuit.

Jan. 7, 1953.

Michael F. Helfgott, New York City (Roger B. Brooks, Boston, Mass., on the brief), for appellant.

John T. Hayes, Boston, Mass. (Schuyler Hollinsworth and Bingham, Dana & Gould, Boston, Mass., on the brief), for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

■■■ This is an appeal from a summary judgment entered under Rule 56, Fed. Rules Civ.Proc. 28 U.S.C.A., dismissing an action seeking money damages for breach of an agreement to sell and convey approximately 200 acres of land in the City of Windsor, Province of Ontario, Canada. There is no doubt that the value of the matter in controversy exclusive of interest and costs is well over $3,000. But it is al-

leged in the complaint that the plaintiff-appellant's decedent at the time he brought this action about a year before his death was a "resident" of Michigan, and that the defendants are "residents" of Massachusetts. Clearly these are insufficient allegations of diversity of "citizenship" necessary for federal jurisdiction under Title 28 U.S.C. § 1332(a)(1). However, it appears so probable that in actual fact the requisite diversity of citizenship of the parties existed that we feel warranted in discussing the merits of this appeal forthwith. Cf. Keene Lumber Co. v. Leventhal, 1 Cir., 1948, 165 F.2d 815. Nevertheless, we cannot pass over the point because federal jurisdiction cannot be assumed but must be clearly shown. We shall, therefore, allow 10 days from the date of this opinion for the filing in this court of a motion under Title 28 U.S.C. § 1653 for leave to amend, which, if not filed and allowed, will necessitate dismissal of the complaint for lack of jurisdiction.

There is no dispute as to the following basic facts.

On February 9, 1948, an agent for the defendants gave the plaintiff's decedent an option to purchase the Canadian real property involved for $160,000. The option was for 90 days, with provision for its extension for an additional six months upon payment of $16,000. It was executed and delivered in New York, it was renewable in New York, and it was to be exercised there. During the original 90 days term of the option, on April 12, 1948, the Hydro Electric Power Commission of the Province of Ontario expropriated approximately 85 acres, or about 40%, of the tract including its frontage on the Detroit River which was its most valuable part. On the day of the expropriation the defendants, through an attorney, notified the plaintiff's decedent that his unexercised option was revoked. Nevertheless the plaintiff's decedent on April 20, 1948, tendered the defendants in New York the sum of $16,000 to extend the option for the additional six months period. His tender was refused, but in spite of the refusal, on October 20 and on October 21, 1948, treating the option as still in force, he purported to exercise it, and on November-

ber 1 he called at the defendants' New York office and asked for a closing date for transfer of the title to the property. When he did so, however, he was told by the man in charge of the defendants' office that since there was no title to transfer there was no need to fix a closing date.

On these facts the court below granted defendants' motion for summary judgment which was based upon the proposition that under the law of the State of New York the option became a nullity on April 12, 1948, and the defendants were therefore absolved from any liability under it, for the reason that the expropriation of part of the land involved by the Hydro Electric Power Commission on that date made it impossible for them to perform their option agreement should they ever be called upon to do so.

Counsel on both sides concede that the law of the State of New York applies for the reason that the option was executed and delivered in that state and was to be exercised there. While it may not be absolutely certain that the Massachusetts courts would look to the law of New York rather than to the law of Ontario for the solution of the question presented, it appears to us so probable that Massachusetts would apply New York law that we feel justfied in honoring the concession of counsel and applying the law of New York.

The plaintiff's action rests upon the proposition that the decedent did all that the defendants permitted him to do to exercise the option in conformity with its terms, and that this action on his part had the effect of creating a valid and binding contract of purchase and sale of the land which the defendants were legally obliged to perform by conveying the land remaining after the taking and assigning the amount awarded as compensation for that part of the land expropriated. The defense, on the other hand, as already indicated, rests upon the proposition that the expropriation of a substantial part of the land before the decedent made any attempt to exercise the option had the necessary effect of rendering performance by the defendants impossible, with the result that the option became a nullity and their liability under it terminated.

■ Perhaps much can be said in favor of the result contended for by the plaintiff. Cullen & Vaughn Co. v. Bender Co., 1930, 122 Ohio St. 82, 170 N.E. 633, 68 A.L.R. 1332. But we are not at liberty in this case to select and apply the rule of law which leads to the result we think preferable. Under Erie R. R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, it is our duty to apply state law, and as we have said the state law applicable is that of New York.

Under the law of that state it seems clear that if the plaintiff had exercised his option before April 12, 1948, the option would already have ripened into a mutually binding and enforceable contract of purchase and sale by the time of the expropriation, so that the purchaser would be bound to accept and the seller bound to assign the amount awarded as compensation in place of the property expropriated. Reife v. Osmers, 1929, 252 N.Y. 320, 169 N.E. 399, 67 A.L.R. 1101. The reason for this is that New York has long followed the rule of Paine v. Meller, 6 Ves. 349 (1801), that from the time of the execution of a purchase and sale agreement involving real property, the purchaser becomes the equitable owner of the land, the vendor retaining the legal title only as security for the payment of the purchase price, with the result that the risk of loss by expropriation or casualty falls upon the purchaser.

But different considerations are involved in the case of an option to purchase real property unexercised at the time of expropriation. The reason for this is that an option is merely a contract whereby an owner binds himself to enter into a contract of purchase and sale with another at a specified price and within a given period of time in the future if the other chooses to do so. Thus it is held in New York, and generally elsewhere, that such an agreement alone does not give the optionee any interest in the real property covered by the option. Matter of City of New York (Upper New York Bay), 1927, 246 N.Y. 1, 157 N.E. 911. Consequently it has been held in a number of jurisdictions that absent a provision to the contrary, the parties to an option contract involving land are absolved from their contractual liabilities whenever without fault on the part of either party the subject matter of the contract, or a material part of it, the continued existence of which was contemplated, is lost or destroyed by fire or expropriation. Caldwell v. Frazier, 1902, 65 Kan. 24, 68 P. 1076; Strong v. Moore, 1922, 105 Or. 12, 207 P. 179, 23 A.L.R. 1217; Clark v. Burr, 1893, 85 Wis. 649, 55 N.W. 401.

No New York case squarely in point has been cited to us nor have we been able to find one. However, some of the language in Matter of City of New York (Upper New York Bay), supra, indicates adherence to the rule of the cases from other jurisdictions cited above. And similar indications also appear in Nitro Powder Co. v. Agency of Canadian Car & Foundry Co., 1922, 233 N.Y. 294, 135 N.E. 507, a case involving a taking by the federal government under its war powers of a quantity of reclaimed TNT from an optionor which prevented performance of the option. For the court in deciding in favor of the optionor, quoted with approval as follows from Tomplin S. S. Co. v. Anglo-Mex. etc. Co., [1916] 2 A.C. 397, 406:

"When people enter into a contract which is dependent for its performance on the continual availability of a specific thing, and that availability comes to an end by reason of circumstances beyond the control of the parties, the contract is *prima facie* regarded as dissolved. The contingency which has arisen is treated, in the absence of a contrary intention made plain, as being one about which no bargain at all was made."

■ These New York cases are not entirely persuasive, but coupled with the authorities from other jurisdictions cited above we think that they give a sufficient indication of the law of New York to require affirmance.

The judgment of the District Court is affirmed, provided a motion for leave to amend under Title 28 U.S.C. § 1653 is filed in this court within 10 days and the motion is allowed. Otherwise the complaint will be dismissed for lack of jurisdiction.