96 N.J. Super. 37 (1967)
232 A.2d 440
LARSTAN INDUSTRIES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
RES-ALIA HOLDING COMPANY, A NEW JERSEY CORPORATION, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1967.
Decided July 11, 1967.
*39 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. A. Walter Socolow, of the New York Bar, argued the cause for appellant, Larstan Industries, Inc. (Messrs. O'Brien, Tartalsky & Clott, attorneys; Mr. George Clott, on the brief).
Mr. Daniel Crystal argued the cause for respondent, Res-Alia Holding Company (Messrs. Cohn & Lifland, attorneys).
Mr. Francis P. Morley argued the cause for respondents, American Casualty Company of Reading, Pennsylvania, Hartford Fire Insurance Company, Boston Insurance Company, and Travelers Indemnity Company (Mr. Bernard D. Kaufman, attorney).
*40 The opinion of the court was delivered by GAULKIN, S.J.A.D.
By lease dated April 16, 1959 and an amendment thereto dated October 8 and executed October 16, 1963, Larstan leased a factory building from Res-Alia. The total agreement (hereafter the lease) contained the usual provisions for the tenant to "take good care of the premises" and make all repairs except structural, plumbing and similar major work and to "comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and City Government and of any and all their Departments and Bureaus applicable to said premises, in, upon or connected with said premises during said term; and shall also promptly comply with and execute all rules, orders and regulations of the Board of Fire Underwriters for the prevention of fires, at the Tenant's own cost and expense, * * *." In the event of the tenant's failure to comply with the above-mentioned provisions, the landlord had the right to have it done at the tenant's expense. The landlord also had the right to terminate the lease for breach of any of its terms "upon giving to the Tenant five days notice in writing * * *."
The agreement contained the following fire clause:
"7th: In case of damage by fire or other action of the elements to the building or buildings on the leased premises if the damage is so extensive as to amount practically to the total destruction of the leased premises or of the buildings, the landlord may within a reasonable time decide not to rebuild in which event this lease shall cease and come to an end and the rent shall be apportioned to the time of the damage; except that in such event the Tenant may exercise its option to purchase as hereinafter set forth with an abatement in the purchase price to the extent of any sum or sums realized on any and all policies of fire insurance covering the premises. In all other cases where the leased premises are damaged by fire without the fault of the Tenant or the Tenant's agents or employees, the landlord shall repair the damage with reasonable dispatch after notice of damage, and if the damage has rendered the premises untenantable, in whole or in part, there shall be an apportionment of the rent until the damage has been repaired. In determining what constitutes reasonable dispatch consideration shall be given to delays caused by strikes." *41 and the following option:
"34th: The landlord hereby irrevocably grants to the tenant * * * the exclusive and absolute right, privilege and option of purchasing the entire property which is the subject of the within Lease for the sum of One Hundred Twenty-five Thousand Dollars ($125,000.) by the payment of Fifty Thousand Dollars ($50,000.) in cash and by the tenant executing and delivering to landlord a non-amortizing standing purchase money mortgage and note for Ten (10) years for the sum of Seventy-five Thousand Dollars ($75,000) with interest at the rate of five percent (5%) per annum payable quarter-annually, the said mortgage to contain a prepayment clause without penalty; the said option to be exercised by the tenant on Thirty (30) days' written notice by tenant to landlord by registered and/or certified mail."
On October 18, 1963, two days after the execution of the amendment to the lease, the building was heavily damaged by fire. By letter dated October 24 David Cohn, Res-Alia's president, wrote Larstan as follows:
"Please be advised that I just received notification from the Building Department of Jersey City that several of the walls of the building at the above captioned address must be torn down.
We, also, were unpleasantly advised from our investigation that the fire and our loss were brought about by your carelessness and recklessness in experimenting which produced the fire.
Please be advised, therefore, that we are looking to you for all our damages. Furthermore, you have violated the terms of your original lease, which does not expire until July, 1964, and have failed to pay the rent and have committed other serious violations which resulted in the fire and our tremendous loss. Needless to say, the building is a total loss for all practical purposes.
Accordingly, you are hereby placed on notice that the original lease which expires in July, 1964, and the agreement to renew same, are hereby terminated and at an end."
It must be noted at this point that the letter did not fix a date of termination or mention the five days' notice thereof required by the lease. Assuming the notice was valid, it could not have taken effect until five days after its receipt by Larstan.
On October 28 Larstan wrote Res-Alia, denying that it had caused the fire or was at fault, and stating:
*42 "Further, your letter of October 24 claims that the building is a total loss for all practical purposes and we assume that you have decided not to rebuild and have declared the lease at an end pursuant to Paragraph 7 of the original lease dated April 16, 1959. Inasmuch as we wish seriously to consider the exercise of our right and option to purchase the premises as specified in our lease with you, we specifically request that you furnish us promptly with copies of all policies of fire insurance covering the premises which you have heretofore advised us orally aggregate the sum of $75,000.
In addition, by reason of our agreed interest in the proceeds of said fire insurance and as an integral factor of our agreed option to purchase the premises, we request you to advise the fire insurance adjustors, whom you have informed us you have retained to handle claims under your policies, to report to us forthwith as to the present status of such claims and to communicate with us in connection with the prosecution and settlement of such claims."
Defendant refused to give the information requested by Larstan. Consequently, on November 12 Larstan filed this suit in the Chancery Division. In its complaint it stated the facts above set forth, that Res-Alia had ignored its repeated demands for information, and demanded specific performance of its option to purchase for $125,000 less the insurance.
Here it must be noted that there is no evidence that Larstan followed the clause of paragraph 34 of the lease which provided that the option was "to be exercised by the tenant on Thirty (30) days' written notice by tenant to landlord by registered and/or certified mail."
On December 9, 1963 Res-Alia filed an answer and counterclaim in which it denied Larstan's right to exercise the option, principally because (1) the lease was cancelled by Cohn's letter of October 24, and (2) the fire was due to Larstan's negligence. The answer also alleged that the demand for specific performance was "premature since the option agreement has no legal validity and did not come into operation until the defendant has had a reasonable opportunity to decide whether or not to rebuild." The counterclaim demanded damages of Larstan for causing the fire.
Thereafter, the American Casualty Company of Reading, Pennsylvania, Hartford Fire Insurance Company, Boston *43 Insurance Company and Travelers Indemnity Company, the insurance companies which had issued fire policies to Res-Alia, paid Res-Alia $71,007.31 for the fire damage and claimed subrogation against Larstan. The companies caused an action at law to be instituted in the name of Res-Alia against Larstan for negligently causing the fire. That action was consolidated with the Chancery Division action but, by agreement of counsel, it was tried first and separately before Judge Matthews without a jury. He found Larstan's negligence had caused the fire, and that the fire damage to the building was $140,823.46.
Larstan then filed a supplemental complaint demanding that any claim by Res-Alia or the companies for said $140,823.46 or any part thereof be barred because (1) the companies had no right of subrogation, and (2) Res-Alia was not entitled to collect any more than the option price of $125,000 less the insurance monies. The trial judge rejected these contentions and entered judgment that Larstan was not entitled to specific performance of the option agreement, and that Res-Alia and the companies are entitled to collect the $140,823.46 from Larstan. Larstan appeals. We reverse.

I
We hold that the lease and the option therein contained were in full force and effect at the time of the fire and when Larstan wrote its letter of October 28; that said letter, Larstan's efforts to obtain the information (to which it was entitled) as to Res-Alia's plans regarding rebuilding and as to the insurance, and the institution of the specific performance action  all of which were resisted by Res-Alia  constituted a sufficient and timely exercise of the option. This is especially true since the lease gave Res-Alia a reasonable time after the fire to advise Larstan whether it elected to rebuild and, as we pointed out, the answer intimated that Res-Alia had not yet made up its mind. However, it is not now denied that Res-Alia decided not to rebuild and has not rebuilt.
*44 The right to buy the property for $125,000 was a right separate and apart from the right to a credit for the insurance proceeds in the event of fire. Larstan had an absolute right, on October 28, to elect to buy for $125,000. Therefore, the only questions before us are these: Assuming Larstan negligently caused the fire, is it barred (1) from exercising the option, even at $125,000, and (2) if not, is it barred from the benefit of the insurance monies? We hold that there is nothing in the lease or in the law which bars Larstan from exercising the option or from the benefits of the insurance.

II
Once Larstan effectively exercised its option, as we hold it did, Res-Alia's only right was to receive from Larstan the purchase price of $125,000 less the net proceeds of the insurance; Res-Alia thereafter had no right to collect from Larstan for the damage to the building caused by the fire. The insurance companies therefore had no such right either. Standard Accident Insurance Co. v. Pellecchia, 15 N.J. 162 (1954); Board of Education, Woodbridge Tp. v. Kane Acoustical Company, Inc., 51 N.J. Super. 319, 326-329 (App. Div. 1958).
By virtue of the terms of the lease Larstan had an inchoate equitable interest in Res-Alia's insurance prior to the fire. This interest became choate after the fire, even though Larstan was not named in the policies and knew nothing of their contents or amounts, and the fire was caused by Larstan's negligence, even if gross. Cf. Phoenix Ins. Co. v. Erie & Western Transportation Co., 117 U.S. 312, 325, 6 S.Ct. 750, 29 L.Ed. 873, 8880 (1886); Home Ins. Co. of New York v. Northern Pacific Ry. Co., 18 Wash.2d 798, 140 P.2d 507, 147 A.L.R. 849 (Sup. Ct. 1943); 6 Appleman, Insurance Law and Practice § 4056, pp. 539-541; Annotation, "Subrogation of insurer to insured's right against the carrier where shipping contract provides that carrier shall have the *45 benefit of insurance," 39 A.L.R. 1116 (1925). It is not contended that Larstan burned the property deliberately.
Nor do the companies have the right to get back any of the $71,007.31 from Res-Alia on the theory that their rights of subrogation were impaired. First of all, in the absence of specific provision in the policy to the contrary, such impairment by virtue of an agreement made before a loss generally is immaterial. Secondly, here the policies expressly authorized such agreements.

III
Larstan is entitled to the benefit of the $71,007.31 paid by the companies less the fee paid by Res-Alia to the public adjuster whom Res-Alia hired to adjust the loss. It was agreed at the oral argument that the adjuster's fee was $7,100. However, at the closing of title Larstan must pay to Res-Alia the $50,000 cash down-payment called for by the option agreement. The net proceeds of the fire insurance are to be applied in reduction of the stipulated $75,000 purchase money mortgage. Larstan argues that the insurance monies should be applied first to the $50,000 down-payment and the balance to the purchase money mortgage. That would be patently unjust. The building has been destroyed and Res-Alia may not be compelled to take the vacant land as security for a mortgage of over $60,000. We deem it obvious that that was not the expectation of the parties or what they bargained for.
The judgment is reversed and the case is remanded to the Chancery Division for further proceedings consistent with this opinion.
LEWIS, J.A.D. (dissenting).
With deference I disagree with the conclusion reached by my colleagues that there is nothing in the lease or in the law which bars Larstan "from the benefits of the insurance."
The law action tried before Judge Matthews resulted in a judgment of $140,823.46, entered March 18, 1966, *46 against Larstan and in favor of Res-Alia. It was based on a finding that the fire which destroyed the landlord's property was caused by the tenant's negligence. The court, however, stayed execution pending a determination of the Chancery proceedings. Judge Matthews, in his opinion for the Chancery Division, after referring to the prior proceedings, said that the evidence clearly demonstrated that the conduct of the tenant on the premises, with respect to the operation of its business, "bordered on recklessness."
The judgment of the Chancery Division, filed on January 10, 1967, dismissed Larstan's complaint for specific performance and dissolved the restraints with respect to the enforcement of the tort judgment. Larstan appeals only from the judgment of the Chancery Division.
The majority opinion leaves the parties in this position: Larstan, the tenant, whose tortious conduct caused the destruction of the landlord's property, is relieved of any obligation under the judgment against it for damages. It has the right to exercise the option to purchase the demised premises at the agreed price of $125,000 upon payment of $50,000 and giving the grantor a purchase money mortgage of approximately $11,000 (the difference between the originally contemplated mortgage of $75,000 and the insurance proceeds of $71,007.31 less an adjuster's fee of $7,100).
Res-Alia, the owner, retains the insurance proceeds but is denied the right of recovery on its judgment of $140,823.46. It is required to sell the property at $125,000 and to take back a mortgage of approximately $11,000 on virtually vacant land.
The insurance carriers, who assumed a risk of liability to Res-Alia, are denied any right of subrogation against Larstan for the fire loss which they paid to their insured.
The rationale of the carrier (transportation) cases referred to in the majority opinion does not furnish an inflexible concept of equity for application to the instant controversy. Where a bill of lading provides that the carrier shall have the benefit of any insurance effected by the shipper, *47 the payment by the insurer to the carrier should be deemed in equity to extinguish the shipper's right of action against the carrier. In such a situation the insurance company puts itself in privity with the contracting parties by its agreement to insure specific property in transit and its dealings with the property, subject to the terms of the bill of lading by which the carrier is a beneficiary of the insurance in case of loss.
Here, the tenant was not a designated beneficiary under the fire insurance policies and apparently no insurer-tenant privity existed, express or implied, by conduct, custom or usage. There is nothing in the record to suggest that the insurance carriers knew the tenant or that they were aware of the risks to which the premises were exposed by the tenant's use thereof. Indeed, had they known, it is conceivable that the insurance coverage might have been cancelled or the insurance rate increased. It is noted that plaintiff's record on appeal is inadequate in significant aspects; we have not been furnished with copies of the insurance policies nor the applications for insurance.
I agree with the majority opinion that Larstan's right to buy the property for $125,000 was a right separate and apart from the alleged right to a credit for the insurance proceeds in the event of fire. Absent the option clause and the fire loss provisions in the lease, there would be little, if any, doubt that the insurance companies would not be deprived of their claims for subrogation. It is, therefore, necessary to interpret the insurance clause, supra. A fair reading of that provision indicates that the parties did not agree that the tenant would be entitled to an insurance proceeds abatement regardless of its negligence. Any ambiguity in that connection, as stated by the Chancery Division, is "almost entirely dissipated by reference to other provisions of the lease * * *."
I share the equitable view expressed in the opinion of Judge Matthews that:
*48 "Under these circumstances, it would not be consonant with the principles controlling the court of equity to permit the tenant to take advantage of the situation, through the vehicle of specific performance, to reduce its liability for the damage it has inflicted on the landlord and, further, to cut off completely the rights of the subrogating insurance company, which, under the circumstances, must be considered an innocent third party to this whole affair."
The doctrine of subrogation is an equitable remedy "designed to promote justice"; it will not be allowed where "inequity would result." 11 Appleman, Insurance Law & Practice, § 6502, pp. 293-297 (1944). It was stated in Standard Accident Ins. Co. v. Pellecchia, supra (cited in this court's main opinion):
"Subrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it, Camden Trust Co. v. Cramer, 136 N.J. Eq. 261, 264 (E. & A. 1944), Restatement of the Law of Security, § 141, comment (a). It is a right of ancient origin, having been imported from the civil law to serve the interests of essential justice between the parties. Sullivan v. Naiman, 130 N.J.L. 278, 280 (Sup. Ct. 1943). * * *
Subrogation is highly favored in the law, Schmid v. First Camden National Bank, 130 N.J. Eq. 254, 266 (Ch. 1941), although it is not an absolute right but rather is applied under equitable standards with due regard to the legal and equitable rights of others, Gaskill v. Wales, 36 N.J. Eq. 527, 533 (E. & A. 1883) * * *." (15 N.J., at pp. 171-172)
The insurance proceeds should not unjustly enrich the lessor-optionor, nor should the tenant-optionee, whose fault occasioned the loss, profit by an insurance abatement. Moreover, it has been said that under the prevailing rule the holder of an option to purchase real estate has no right to share in the money collected under a fire insurance policy issued in the name of and paid for by the optionor, when the loss occurred before the option was exercised. 1 Richards, Law of Insurance (5th ed. 1952), § 156, p. 587. See Trumbull v. Bombard, 171 App. Div. 700, 157 N.Y.S. 794 (App. Div. 1916), affirmed o.b. 225 N.Y. 638, 121 N.E. 895 (Ct. App. 1919); Strong v. Moore, 105 Or. 12, 207 P. 179, 23 A.L.R. 1217 (Sup. Ct. 1922); Annotations, 23 A.L.R. *49 1225 (1923), 65 A.L.R.2d 989, 990-994 (1959). 5 Couch, Cyclopedia of Insurance Law (2d ed. 1960), § 29:107, pp. 393-394, cites the same line of authority, and cases to the contrary, e.g., Gard v. Razanskas, 248 Iowa 1333, 85 N.W.2d 612, 65 A.L.R.2d 982 (Sup. Ct. 1957).
Larstan seeks specific performance. In the circumstances of this case it would not be inequitable to permit it the right to purchase at the price previously agreed upon, provided the settlement is made on conditional terms that would not visit an inequity upon Res-Alia and the insurance companies. Lord Chancellor Cowper stated over two and a half centuries ago, "He who will have Equity, or comes hither for Equity, must do Equity." Demandray v. Metcalf, Prec. Ch. 419, 420 (1715). Adopting that concept, the validity of which is just as sound today as it was then, I would adjust the rights of the respective parties, bearing in mind the changed conditions, as follows:
Larstan should have the right to exercise its option to purchase upon paying to Res-Alia the full purchase price of $125,000 in cash, and upon so doing the judgment held by the latter against Larstan should be cancelled.
Res-Alia, upon receipt of the full purchase price, should remit to the insurance companies the proceeds of the fire loss it received, less the adjuster's fees which, as a reasonable expense incurred, has not been disputed.
I would affirm the judgment rendered by the Chancery Division if Larstan declined to exercise its right to purchase upon such equitable terms.