REED, Chief Judge.
The basic issue on this appeal is whether or not the trial court, acting as the trier of fact in a contract action for damages, misconceived the legal effect of the evidence and thereby entered an award of damages erroneous in amount.
This action was commenced on 30 March 1971 in the Circuit Court for Palm Beach County, Florida. The plaintiff is a real estate broker. The Defendant, General Financial Systems, Inc., (formerly known as Bancstock Corporation of America) was the vendor of real property on the sale of which the plaintiff claimed the right to a commission. After an answer had been filed, the parties stipulated to most of the essential facts, and final hearing was held. Final judgment was entered on 13 April 1972 awarding the plaintiff a broker’s commission in the amount of $1,340.74. On defendant’s motion for an amendment of the final judgment, which we consider to be a motion for rehearing, the defendant belatedly brought to the trial court’s attention the fact that the plaintiff was holding in escrow $17,000.00 as a part of the purchase price for the property in question which fund plaintiff refused to deliver because of its dissatisfaction with the amount of the commission awarded in the final judgment. Thereupon the trial court amended the final judgment on 1 May 1972 to require the plaintiff to refund the deposit to the defendant, less the amount of the commission awarded, to-wit: $1,340.-74.[1] This appeal was thereafter taken by the plaintiff.
The facts are not in dispute. On 29 January 1969 the defendant entered into an option agreement with Coral Manor Construction Company under which the latter had an option to buy from the defendant 32.02 acres of land in Palm Beach County. The option could be exercised on the entire tract only. The option extended for a period of one year with a right in the buyer to extend the term for a second year. The purchase price was $6,000.00 per acre, but if the option was extended, the purchase price would include upward adjustments for ad valorem taxes and interest on the basic purchase price of $6,000.00 per acre. The purchase price was to be paid 30% in cash on closing and the balance in installments over a four year period thereafter. The deferred balance of the purchase price was to be represented by a promissory note secured by a mortgage on the subject *315 property. The contract expressly acknowledged the plaintiff was its procuring cause and provided for a commission payable by the defendant to the plaintiff on closing in the amount of 7% of the total purchase price computed in accordance with the contract. On 11 December 1969 the term of the option was extended for an additional year.
On or about 24 August 1970 the State of Florida through the Department of Transportation acquired by eminent domain 9.905 acres which were subject to the option agreement. To accomplish the taking of the 9.905 acres before final judgment, the State paid into the registry of the court in accordance with § 74.051, F.S.1969, F.S.A., $181,692.00. On 16 November 1970 these funds were withdrawn by the defendant under the authority of a court order.
On 18 December 1970 the buyer, Coral Manor Construction Company, notified the defendant that it chose to exercise its option, and the transaction was closed on 1 April 1971. The closing statement[2] shows that the purchase price was figured on the total acreage originally subject to the option without diminution for the 9.905 acres taken by the State. In other words, the basic purchase price was $192,120.00 (32.02 acres x $6,000.00). In addition, the seller was given appropriate credit for taxes and interest — all as required by the option agreement. The buyer on the other hand was given credit against the purchase price for the amount the State paid into the registry of court for the 9.905 acres taken in the eminent domain proceedings and withdrawn by the defendant (seller). The difference between the buyer’s 'credits and the seller’s credits was paid in cash on closing. The buyer, in addition to receiving the credit for the monies paid by the State for the 9.-905 acres, of course, acquired a deed from the seller for the remaining 22.115 acres.
On these facts the trial court awarded the plaintiff a commission of 7% on *316 $19,153.45. This latter figure represented the difference between $192,120.00 and $181,692.00 increased by the taxes credited to seller ($192,120.00 — $181,692.00 + [$3958.31 + $4767.14]). In our opinion, this calculation misconceived the legal effect of the conduct of the parties to the option contract and resulted in a substantial denial of the plaintiff’s contractual right to a commission. Following the trial court’s formula, had the funds from the taking been somewhat greater in amount, no commission whatsoever would have been payable.
When the state by eminent domain took approximately 1/3 of the land subject to the option agreement, the parties thereto might have elected to treat the contract as discharged by impossibility of performance. See Brooks v. Yawkey, C.A., 1st Cir., 1953, 200 F.2d 663, 665 and authorities therein cited. Instead they modified the contract by allowing the deposit paid by the state to stand irT lieu of the property taken and substituting for the deferred payment of the purchase price, full payment on closing. The modifications effected by the conduct of the parties to the contract, if anything, improved the seller’s position in respect to the payment of the purchase price, but it in no way altered the terms of the contract with respect to the broker’s right to a commission or the calculation of the purchase price.
For this reason, the final judgment dated 13 April 1971 is reversed. On remand the trial court shall enter a final judgment for the plaintiff in the amount of $14,947.68 (which represents 7% of $192,120.00 plus the accrued taxes and interest shown on the closing statement) in addition to costs.
Reversed and remanded.
CROSS and OWEN, JJ., concur.

. The plaintiff has assigned as error not only the final judgment, but this amendment. The issue as to the amendment we consider to be moot since both parties by their briefs indicate the order has been complied with.

. The closing statement was set up as follows:
Credit Seller Credit Buyer
Sales Price:
32.02 acres at! 8,000 per acre $192,120.00
Taxes:
1969 — $123.62 per acre (x 32.02) 3,958.31
1970 — $148.88 per acre (x 32.02) 4,767.14
$181,692.00 Property taken by Department of Transportation (Condemnation Proceeds Paid to Date)
17,000.00 Deposit upon exercise of option
Half of appraisal fee as agreed upon 250.00
Interest due under option:
On $200,845.45 at 7%% for 293 days or $81.84 per day 12,259.12
On $19,153.45 at 714% for 114 days or $3.93 per day through 3/11/71 448.02
Stamps on Deed:
Documentary O CD W
Surtax ID © Ci <N
2,000.00 Contract Deposit
$200,778.65 $213,802.59
Seller’s Credit $213,802.59
Less Buyer’s Credits 200,778.65
Due Seller from Buyer $ 13,023.94