## TRUMBULL v. BOMBARD.

(Supreme Court, Appellate Division, Third Department. March 8, 1916.)

1. INSURANCE ⬖580(1)—INSURABLE INTEREST—VENDOR AND PURCHASER.
    A vendor of land under a contract is entitled to the benefit of insurance taken by a purchaser in his own name under an agreement to insure for the benefit of the vendor; but where such a purchaser obtains insurance for his own benefit without such an agreement, the latter can claim no benefit from the insurance.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1439, 1440; Dec. Dig. ⬖580(1).]

2. LANDLORD AND TENANT ⬖92(1)—OPTION TO PURCHASE—CONSTRUCTION— APPLICATION OF INSURANCE MONEY.
    Under a lease for five years, requiring the lessor to build an addition to the store and to make repairs, which was done at an expense of $700, and giving the lessee the option to purchase the premises for $5,000 at any time during the lease, but not providing for the application of insurance money in case of damage to the buildings by fire, the lessee could

---

⬖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not require the lessor to apply on the purchase price the proceeds of in-surance policies which the lessor had placed upon the buildings subsequent to the execution of the lease, and for which he had paid the premiums.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 290; Dec. Dig. ⟨⟩92(1).]

3. LANDLORD AND TENANT ⟨⟩150(1)—CONDITION OF PREMISES—REPAIR.

Without an agreement to that effect, the lessor is not bound to repair premises subsequently damaged by fire.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 536, 538; Dec. Dig. ⟨⟩150(1).]

4. LANDLORD AND TENANT ⟨⟩101—UNTENANTABLE CONDITION OF PREMISES—RIGHTS OF LESSEE.

After a fire had rendered leased premises untenantable, the tenant might elect to consider the lease continued in force for the remainder of the term, and repair or rebuild the damaged property at his own expense.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 314, 315; Dec. Dig. ⟨⟩101.]

5. LANDLORD AND TENANT ⟨⟩101—UNTENANTABLE CONDITION OF PREMISES—SURRENDER OF PREMISES—STATUTE.

In such case the tenant was entitled, under Real Property Law (Consol. Laws, c. 50) § 227, to quit and surrender possession of the leased premises, if he elected to do so within a reasonable time, depending much upon the circumstances.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 314, 315; Dec. Dig. ⟨⟩101.]

6. LANDLORD AND TENANT ⟨⟩101—UNTENANTABLE CONDITION OF PREMISES—LIABILITY FOR RENT.

In such case the lessee, unless making an election to surrender possession of the leased premises, continued liable under the covenants of the lease for the payment of the rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 314, 315; Dec. Dig. ⟨⟩101.]

7. LANDLORD AND TENANT ⟨⟩92(1)—OPTION TO PURCHASE—TENDER OF PERFORMANCE.

Where a tenant had an option to purchase the leased premises, but was not entitled to have the proceeds of insurance policies received by the lessor applied upon the purchase price of the property, his offer of the purchase price, as reduced by the amount of such proceeds, was too small, and wholly ineffective.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 290; Dec. Dig. ⟨⟩92(1).]

8. LANDLORD AND TENANT ⟨⟩101—UNTENANTABLE CONDITION OF PREMISES—ELECTION TO CONTINUE AS TENANT.

Where a fire occurred November 8th, rendering the premises untenantable, the tenant's remaining in possession until January 22d following without proposing to surrender, notwithstanding a demand on behalf of the landlord, as well as his answer in an action for rent, showed an election to continue the tenancy.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 314, 315; Dec. Dig. ⟨⟩101.]

Howard, J., dissenting.

Appeal from Trial Term, Clinton County.

Action by Ida Grace Trumbull against Thomas E. Bombard. From a judgment for plaintiff, defendant appeals. Affirmed.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Arthur S. Hogue, of Plattsburgh, for appellant.
Charles J. Vert, of Plattsburgh, for respondent.

LYON, J. The questions involved upon this appeal are the respective rights of the parties hereto under a lease giving the lessee an option to purchase certain premises known as the Allen house, store, and lot, situated at Ausable Forks, N. Y. The lease was of date May 11, 1914, for a period of five years, at an annual rental of $500, payable quarterly. Embodied in the lease was the following provision:

"And the said party of the second part is hereby given the option, and the said party of the first part agrees to sell the said Bombard all the premises above described for the sum of $5,000 at any time before the expiration of this lease."

The defendant entered into immediate possession of the property, and the plaintiff in accordance with the requirements of the lease expended $700 in building an addition to the store and in repairs, at the time and in the manner suggested by the defendant. The defendant expended about $150, mainly for electric wiring, shelving, and painting, and he and his brother each devoted about two months' time in fitting up the property in accordance with a clause in the lease giving the defendant the right to make such further repairs and changes for the betterment of the property as he might see fit. The defendant occupied the store for general mercantile purposes, and on August 11, 1914, paid the quarterly rent which became due that day. On November 8th following a fire originated in the store, and the larger part of the building was destroyed, and the building rendered untenantable. Concededly the fire occurred without the fault of either of the parties to the lease. Soon after the fire plaintiff received $3,925 for insurance under policies payable to her, which she had placed upon the buildings subsequent to the execution of the lease, and for which she had paid the premiums. On November 11, 1914, three days after the fire, the defendant paid the plaintiff the quarter's rent falling due that day. The store was not rebuilt, and the house appears not to have been rented until the next March or April.

January 22, 1915, the defendant wrote the plaintiff, stating that he elected to accept the option given by the lease, and offering to pay her $5,000, less the amount of the insurance moneys received by her, and also agreeing to pay her the insurance premiums required to carry the policies from the date of the lease until she ceased to pay such premiums. The letter also advised the plaintiff that the defendant quit and surrendered the possession of the premises as a tenant, and that the cause of his doing so was the fire which destroyed the premises, and that he quit by virtue of his rights as stated in section 227 of the Real Property Law. The letter closed with the request that the plaintiff prepare and deliver to the defendant a warranty deed of the premises, together with a statement of the exact amount to be deducted from the sum of $5,000, which balance he would pay the plaintiff, and that he retained possession as vendee.

On January 28, 1915, the plaintiff caused to be tendered to the defendant a warranty deed of the premises, and demand to be made upon him for the sum of $5,000. This tender and demand the defendant refused, but renewed his said offer of January 22d. February 11, 1915, the plaintiff demanded of the defendant the payment of the quarter's rent of $125 falling due that day, or that he yield her possession of the property. The defendant has not made the payment, and has made no further surrender or attempt to surrender the property. This action has been brought to recover such quarter's rent claimed by plaintiff to have become due February 11, 1915.

The defendant, in addition to the denials contained in his answer, interposed a counterclaim, asking for judgment requiring the plaintiff to specifically perform the agreement contained in the lease, and to convey the property to him upon the payment to her of the balance of $5,000 after deducting the moneys received by her under the fire insurance policies. The plaintiff by reply denied defendant's right to specific performance. The trial court refused such relief, and held that the lease was in full force and effect, during the three months next prior to February 11, 1915, and at the time of the commencement of the trial of this action in September, 1915, and directed judgment for the quarter's rent becoming due February 11, 1915, together with the costs of the action. From such judgment this appeal has been taken.

[1] The two important questions involved are whether the defendant is entitled to have the insurance moneys applied upon the purchase price of the property, and whether the defendant remains holden for the payment of the rentals stipulated in the lease. The defendant, in support of his contention that the equities of the situation require the application of the insurance moneys in reduction of the purchase price, cites the case of Williams v. Lilley, 67 Conn. 50, 34 Atl. 765, 37 L. R. A. 150. In that case it was held that the insurance standing in the name of the owner of the building, the premiums of which were paid by the lessee of a portion of the building with an option to purchase the whole building and have all payments of rents applied as part of the purchase money, was for the benefit of the lessee upon his acceptance of the option, where the contract required him to keep the building in a condition to be desirable for tenants, and provided that, on his failure to realize from the rents collected by him as much as he paid for rent and expenses, the difference should be returned to him. As so much reliance seems to be placed upon this case as an authority for defendant's contention, we quote somewhat liberally from the lengthy opinion for the purpose of showing the dissimilarity of the cases:

"The intent of the parties to treat the contract, in the event of the plaintiff's election to take the property, as in effect a present purchase of it, as of the date of the agreement, appears to be thus clearly manifested. * * * From a careful consideration of these peculiar features of the instrument it appears clear to us that the plaintiff's relation to the premises in question, as lessee of a portion thereof, was, and was designed, understood, and intended by the parties to be, subordinate and incidental to a broader connection with the entire property, as an inchoate or initiate purchaser thereof. * * * Under such a construction—which seems to us a just one—ought it

not to be held that the sums stipulated to be paid  *  *  *  by the plaintiff for insurance upon the property were so paid with the intention, attributable to both parties, that such insurance should protect both, and should, in case of loss, though payable to the defendants as owners of the legal title to the property insured, be what the property itself was, a thing to which an equity applied, a trust attached, a matter to which the contract in its spirit and essence extended?  *  *  *  This insurance had, as we have seen, been effected pursuant to that part of the contract which was not confined to the leased property, in the name of the defendants, but at the expense of the plaintiff."

The court also said:

"Indeed, the provisions of the agreement between the parties are so exceptional and peculiar that we desire it to be clearly understood that our decision is largely based upon them, and confined to the individual case presented, and should not be regarded as laying down general principles alike applicable to all contracts of option, or to such contracts usually."

In the case of Cromwell v. Brooklyn Fire Insurance Company, 44 N. Y. 42, 47, 4 Am. Rep. 641, it was held that a vendor under a contract for the purchase of real estate is entitled to the benefit of insurance taken by a vendee in his own name, but under an agreement to insure for the benefit of the vendor, and that where such a vendee obtains insurance for his own benefit, without any agreement to insure for the benefit of the vendor, the latter can claim no benefit from the insurance. Analogous in principle is the relation of mortgagor and mortgagee, in which it is held that a contract of insurance against fire as a general rule is a mere personal contract, and that, in case a mortgagor effects insurance upon the mortgaged premises, the mortgagee can claim no benefit from it unless he can base his claim upon some agreement, although the mortgagor may have been personally liable for the debt secured by the mortgage. Carter v. Rockett and New York Fire Ins. Co., 8 Paige, 437; Cromwell v. Brooklyn Fire Ins. Co., supra; 19 Cyc. 884.

A leading case upon this question, and one which is very applicable to the case at bar, is the case of Edwards v. West, L. R. 7 Chan. Div. 858, 47 L. J. Ch. 463, 38 L. T. Rep. N. S. 481. By the terms of the lease which was the subject of that litigation the lessor was to insure in the sum of £14,000. If damage by fire should not exceed £4,000, the term of the lease was to continue, and the lessor was to apply the insurance moneys to the restoration of the premises; but if the damage caused by fire should exceed £4,000 the term of the lease was to cease. There was no stipulation as to insurance moneys, except in the single contingency of the damage being less than £4,000. The lessees were given an option to purchase for £14,000. Pending the exercise of such option the property was damaged by fire to the extent of £12,000. Thereafter the lessees gave notice of their intention to purchase and to claim the insurance moneys as damages. The lessor refusing to sell upon those conditions, the lessees brought the action, claiming to be entitled to purchase the property, and that the lessor might be declared a trustee for the lessees of the insurance moneys, which must be treated as purchase money or as belonging to the lessees. The court, in holding that the lessees had no claim to the insurance money, said:

"There is no stipulation whatever with regard to these insurance moneys, except in one contingency, namely, fire causing damage of less than £4,000. In that event the parties have said what was to be done with the money; as to every other event they have maintained absolute silence. It is said that I am therefore to infer that there was a contract that the money should be held for the benefit of the possible purchaser. I do not think that I can draw that inference from that silence, and I think that when we look at the nature of the option we see that there is no hardship whatever in not drawing such an inference. When a fire happens which causes damage amounting to more than £4,000, the lessee is released from his obligation to pay rent, and then he has this question to ask himself: Is it worth my while to buy the premises, or is it not worth my while? If it is worth his while to buy them at the price fixed upon, he buys them; if it is not worth his while, he leaves them. That is the whole case."

[2] In the case at bar there is nothing in the lease which can be construed into a covenant upon the part of the lessor that she would maintain the buildings during the existence of the option, or that, if the option should be accepted, she would convey the property in the condition in which it then was or should be, after $700 had been expended by her in repairs. Had it been contemplated by either party that in the event of damage to the buildings by fire the insurance moneys should be applied upon the purchase price of the property, such provision would naturally have been inserted in the lease. Doubtless the defendant, had he wished, might have obtained the insertion of a clause allowing him to take out insurance upon the buildings in the name of the plaintiff, which, in the event of their damage or destruction by fire, should be applied upon the purchase price of the property. However, he did not see fit to do so, although he obtained insurance upon his own property contained in the store. To require the plaintiff, in the absence of any agreement so to do, to apply for the benefit of the defendant the proceeds of insurance policies which her prudence and her money had procured for her own protection, and to require that application to be made, not under a contract of purchase between the parties, but under a mere option to purchase, which the defendant had not seen fit to accept until it became apparent to him, more than two months after the fire, that it would be profitable for him to do so, is demanded by no principle of law or of equity.

[3-6] As to the second question, the liability of the defendant for the payment of the rentals stipulated in the lease: In the absence of an agreement to that effect, the lessor was not bound to repair the damaged premises. Sawyer v. Adams, 140 App. Div. 756, 126 N. Y. Supp. 128. The fire having rendered the premises untenantable and unfit for occupancy, the defendant might follow either of two courses: He might elect to consider the lease continued in force for the remainder of the term, and repair or rebuild the damaged property at his own expense (Doupe v. Genin, 45 N. Y. 119, 6 Am. Rep. 47; Viterbo v. Friedlander, 120 U. S. 712, 7 Sup. Ct. 962, 30 L. Ed. 776); or he might quit and surrender possession of the leasehold premises (Real Property Law [Consol. Laws, c. 50; Laws of 1909, c. 52] § 227). Unless he made such surrender, he continued liable under covenants of the lease for the payment of the rent. Smith v. Kerr, 108 N. Y. 34, 15 N. E. 70, 2 Am. St. Rep. 362. In case he

elected to make such surrender, he was required to act within a reasonable time, and what would be considered a reasonable time would depend very much upon the circumstances. Fleischman v. Toplitz, 134 N. Y. 349, 31 N. E. 1089; Bassett v. Dean, 34 Hun, 250; Decker v. Morton, 31 App. Div. 469, 52 N. Y. Supp. 172.

The defendant's stock of goods was insured, and its immediate disposition was in a measure subject to the requirements of the standard fire insurance policy. The fire loss was adjusted, however, on or about November 20th. The defendant then removed the goods from the damaged store building to the house on the premises, although there was at the time a vacant store in the village, where it would appear that he could have placed his goods. Immediately following the removal of the goods to the house, he engaged in selling them. He continued the sale until about the middle of December, when nearly all the property had been disposed of. However, some of it seems to have been left in the house until the house was remodeled and leased in March or April following. Defendant's horses and hay were sold, and taken from the barn early in January. A safe and oil tank were left in the store building and a wagon in the barn, evidently at least until spring. There is no evidence of any attempt upon the part of the defendant to surrender the leased premises prior to his letter of January 22d, to which reference has been made. That the defendant elected to consider the lease still in full effect January 22, 1915, 2½ months after the fire, is admitted by his then seeking to avail himself of the option, which by the terms of the lease he was required to do during the period of its existence. In his letter of January 22d, he states that he quits and surrenders the premises as tenant, but says:

"I advise you, further, that I will retain possession of the said premises as the vendee thereof and am awaiting your deed."

[7, 8] Defendant's position, as stated in the brief of his counsel upon this appeal, is that, by reason of defendant's alleged acceptance of the option by his letter of January 22d, there became a merger of estates, and that the defendant then ceased being a tenant, and became the owner of the premises in equity. Not having been entitled to have the insurance moneys applied upon the purchase price of the property, defendant's offer did not comply with the option, but was of a sum far too small, and hence was wholly ineffective. That the defendant in fact elected to continue the relation of landlord and tenant cannot only be inferred from the fact of his remaining in possession until January 22d, without proposing to surrender the premises, notwithstanding demand for possession had been made on plaintiff's behalf, but also from the following allegation of his answer, verified March 27, 1915:

"That it is his desire to build a proper and suitable store building on the said lot, in order to enable him to continue his business; that the particular location in that particular village is of value to this defendant; and that, if he is not permitted to retain the same, it will be very difficult and impossible for him to obtain a proper and suitable place to operate his business."

The conclusion of the trial judge that the lease was in full force and effect during the three months next prior to February 11, 1915, was correct, and the judgment and order appealed from should be affirmed, with costs. All concur, except HOWARD, J., who dissents.