## COMMERCIAL UNION ASSUR. CO., LIMITED, OF LONDON v. JASS et al. *

Circuit Court of Appeals, Fifth Circuit.
December 3, 1929.

No. 5482.

T. A. Hammond, Daniel MacDougald, H. H. Hargrett, and W. L. Bryan, all of Atlanta, Ga. (Smith, Hammond, Smith & Bloodworth and Spalding, MacDougald & Sibley, all of Atlanta, Ga., on the brief), for appellant.

Reuben R. Arnold and B. P. Gambrell, both of Atlanta, Ga. (Reuben R. & Lowry Arnold, of Atlanta, Ga., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Appellees brought suit on a policy of fire insurance, in the amount of $2,500, issued by appellant, covering a building occupied and used by appellees as a warehouse, and recovered judgment for the full amount. The policy in terms purported to insure appellees against all direct loss or damage by fire to the building, and contained clauses voiding it if the interest of the insured was not truly stated therein, or was other than unconditional and sole ownership, or if the subject of the insurance was a building on ground not owned by the insured in fee simple, unless otherwise provided by agreement indorsed on or added to the policy. The policy showed the following indorsement, "Notice accepted that building is on leased ground from Railroad and lease contains a waiver of subrogation." Appellant defended on the ground that appellees had no insurable interest in the property; that, if the insured had any interest in the property, it was not truly stated in the policy, was other than sole and unconditional ownership, and at most was nominal.

There was evidence tending to show the following facts: Appellees, Samuel Jass and Moses L. Jass, are partners, trading as the Jass Manufacturing Company, and are engaged in the manufacture of cotton mill waste for filling beds. They occupied the brick building described in the policy by virtue of a written lease from the Southern Railway Company, dated September 1, 1922, made to Moses L. Jass as "proprietor of and trading as Jass Waste Company," for a monthly rental of $30. The lease was indefinite as to term, but contained a clause giving the lessor the right to terminate it on 60 days' notice. The lease contained a clause obligating the lessee to make repairs necessary to put the building in suitable condition for the business, which appellees did, after which its fair rental value was between $150 and $200 per month, and it would have lasted for 30 or 40 years. The building was totally destroyed by fire on May 6, 1925. Its sound value at that time was $9,076.02, and its replacement cost was over $12,000.

*Rehearing denied January 30, 1930.

There was other insurance up to $5,000, making the total $7,500. Appellees rebuilt the building, and were still occupying it when the suit was tried. Their relations with the lessor were satisfactory. Moses Jass was 50 years of age, with an expectancy of life of approximately 20 years. The policy was issued on behalf of appellant by its agents, MacIntyre, Scott & Knight, who had full authority to do so. Before it was issued, the lease was fully disclosed to Mr. Scott of that firm, and he had the building inspected. The evidence above stated was uncontradicted, save that one witness for defendant testified the rental value of the building was $60 per month.

At the close of the evidence, the court overruled a motion to direct a verdict for defendant, and, construing the policy as covering any interest appellees might have had in the building, charged the jury substantially as follows: That appellees were entitled to recover the value of the use of the building; that, if the cost of the repairs appellees were obligated to make, together with the rent, equalled the value of the use of the building, it would be worth nothing, but, if the value of the lease was more than the rental and the burden of repairs, it would be worth something according to the length of time a person could expect to remain in the building and use it; that they might consider the possibility of the lease running for the life of Moses Jass; and that the fact that the railroad could terminate the lease on 60 days' notice at any time would tend to depreciate the value of the expectancy.

Error is assigned to the refusal to direct a verdict, to the giving of the portion of the general charge above outlined, and to the refusal of requested charges to the contrary. Though the policy in terms purported to cover a certain building described therein, it was a contract to indemnify the insured for any damage they might suffer through the destruction of the building by fire. That the interest of the insured was not sole ownership, and that the building was held under lease, was disclosed to the insurer before the policy was issued. The indorsement as to the lease was sufficient to comply with the terms of the policy in that respect. The policy is to be construed most strongly against the insurer. The insured was not guilty of fraud or any act of omission or commission that would have tended to increase the risk. We concur with the District Court in his finding that the policy insured appellees against loss or damage to any interest they might have had in the building. Insurance Co. v. Haven, 95 U. S. 242, 24 L. Ed. 473; Queen Ins. Co. v. Taylor, 100 Ark. 9, 138 S. W. 990; Berry v. Am. Cent. Ins. Co., 132 N. Y. 49, 30 N. E. 254, 28 Am. St. Rep. 548; Home Insurance Co. v. Gibson, 72 Miss. 58, 17 So. 13; N. J. Ins. Co. v. Rowell, 157 Ga. 360, 121 S. E. 414.

Undoubtedly appellees had an insurable interest in the property. If that be reduced to a minimum of 60 days' use of the building, it would be enough. Any interest in property, legal or equitable, however slight, is insurable, and the fact that such title as the insured has may be defeated by a subsequent event is immaterial. Insurance Co. v. Stinson, 103 U. S. 25, 26 L. Ed. 473; Ins. Co. v. Chase, 5 Wall. 509, 18 L. Ed. 524; Schaeffer v. Anchor, etc., Ins. Co., 113 Iowa, 652, 85 N. W. 985; Home Ins. Co. v. Gibson, 72 Miss. 58, 17 So. 13; Rohrbach v. Germania Ins. Co., 62 N. Y. 47, 20 Am. Rep. 451.

As to the amount of recovery, it may be conceded, arguendo, that, if the lease had been terminated by the action of a third party, and appellees were suing for damages on that account, their recovery might be limited by the clause allowing the termination of the lease on 60 days' notice. However, decisions so holding are not in point, as that question is not presented in this case. Here the lease had not terminated, the relations between the parties were cordial, and the lease had run for over three years after the fire at the time of the trial.

A recovery should not be defeated because ascertaining the amount of the damages depends somewhat on estimate. The jury could very well presume that there would be no cancellation of the lease, considering that appellees had rebuilt at their own expense, so long as they proved satisfactory tenants. This might be indefinite. If the appellees had been tenants for the life of Moses Jass without any power of cancellation in the lessor, in estimating the value of the lease the jury could consider his expectancy of life, though the possibility of the termination of the lease at any time by his death would exist. That the lessor had the right to cancel the lease would not make it any more uncertain. If the jury adopted the maximum figures as to the value of the lease, which they had the right to do, it would have to run but a few years longer for the value of the use to equal the recovery, not necessarily the full expectancy of life of Moses Jass. The amount of recovery was clearly a question for the jury under the facts and circumstances of the case. As applicable to the theory on which the case was left to the jury, the charge given was unobjectionable.

Getchell v. Mercantile, etc., Ins. Co., 109 Me. 274, 83 A. 801, 42 L. R. A. (N. S.) 135, Ann. Cas. 1913E, 738; Schaefer v. Anchor Mutual Ins. Co., 133 Iowa, 205, 100 N. W. 857, 110 N. W. 470.

Other errors assigned need not be discussed. The record presents no reversible error.

Affirmed.