LOTTINGER, Judge.
This concursus proceeding[1] presents an issue which has not been addressed in Louisiana jurisprudence: If fire destroys a building which is leased by a lessee with an option to purchase and if the option to purchase is not exercised before the fire, who, between the lessor and lessee, is entitled to the fire insurance proceeds?
James P. Cox and L. J. Harding leased a certain tract of land with a building thereon from Lawson Gayle on June 8, 1976. The “Act of Lease and Agreement to Purchase” contained a provision giving the lessees an option to purchase the property for $40,000.00 at any time during the existence of the lease in consideration of the payment of $1,000.00 within six months after the lease term began. The agreement further provided that the lessee “shall keep up the existing fire insurance policy on the leases [sic] premises.”
Another clause in the agreement provided:
“In case said premises, or any hallway and/or staircase and/or any other means of ingress or egress to and from said premises shall be destroyed or damaged by fire or other unavoidable casualties, so that the said premises shall be unfit or unavailable for the said use by the lessee, then and in any such case, the rent here-inabove reserved, or a just proportionate part thereof, according to the nature and extent of the damage to said premises, shall cease until the said premises shall have been put by the lessor in proper *605 condition for said use, and upon the lessor’s failure to do so within ninety (90) days, the lessee may at his option treat this lease as terminated, and may there upon vacate said premises at once and without notice.”
Cox took out a $12,000.00 fire insurance policy on the premises as required under the lease, naming Gayle as the loss payee under the policy. Cox and Harding also paid the $1,000.00 which gave them the option to purchase the property during the term of the lease. (Harding is not a party to this concursus and makes no claim to the insurance proceeds.) On May 6, 1978, fire destroyed a building on the premises. On July 19, 1978, Cox notified Gayle that he was exercising the option to purchase the property. However, because of a previous disagreement between the parties, Gayle responded to Cox’s exercise of the option by asking for twice the amount of the $40,-000.00 agreed upon in the lease-purchase agreement. Gayle also stated that he wanted the proceeds from the fire insurance policy. Cox sent a second notice of intent to execute the option on March 5, 1979, and Gayle finally accepted. Cox paid $20,000.00 for his half of the property and Harding paid $20,000.00 for his half.
Cox testified that the day after the fire, Gayle promised to rebuild the building as much as the $12,000.00 insurance proceeds would allow. Cox admitted that he was aware of the lease provision allowing him to vacate the premises in the event the building was destroyed and not repaired, but testified that he could not leave the premises because of the nature of his business, which was the storage of junk cars and repair of some others.
Gayle testified that he did not remember discussing anything about the fire and the use of the insurance proceeds to rebuild the building.
Gayle’s claim to the proceeds is based on his ownership of the building at the time of the fire and his designation as the loss payee on the policy insuring the building. Cox, on the other hand, contends that as the named insured under the policy and as present owner of the property with the damaged building he is entitled to the proceeds. Allowing Gayle to collect the insurance money would be tantamount to allowing Gayle to collect twice for the property, Cox alleges.
The trial court rendered judgment in favor of Cox, allowing him to collect the full amount of the insurance proceeds. “From a practical standpoint, Cox had no choice but to remain as lessee after the fire and purchase the property. Furthermore, when Cox purchased the property he paid the full amount that had been stipulated at the beginning of the lease agreement with no allowance for the damage done to the building. Gayle has lost nothing because he was compensated for the loss when he received full value for the property and the subsequent sale,” the trial judge stated. Gayle was not entitled to the insurance proceeds as a result of being the loss payee under the policy because the purpose of the loss payable clause “is to protect property rights on one who is not the named insured, usually a mortgagee with a security interest,” according to the trial court’s written reasons. The trial court analogized this case to the case of Bankston v. Commercial Credit Corp., 86 So.2d 245 (La.App. 1st Cir. 1956). The court in Bankston held that a mortgagee of an automobile who was also the loss payee under the automobile insurance policy could not collect the insurance proceeds on the damaged vehicle after receiving the full amount of the debt at a sheriff’s sale. The trial judge in the case at bar found that Gayle’s interest was similar to the interest of the mortgagee-loss payee in Bank-ston and found that, “Gayle’s interest has been satisfied. His loss was compensated by full payment in the sale to Cox.”
As mentioned at the outset of this opinion the issue presented in this case is apparently res nova. We have been unable to find a Louisiana case addressing this question and the parties have cited none to us. The issue, however, has been addressed in a number of other jurisdictions. The great weight of authority in the other jurisdictions is that when an option is not exercised *606 until after the premises are damaged, the insurance proceeds belong to the lessor. Edwards v. West, 38 L.T.R. (n.s.) 481, 7 Ch.D. 858 (1878); Gilbert & Ives v. Port, 28 Ohio St. 276 (1876); Strong v. Moore, 105 Or. 12, 207 P. 179 (1922); Caldwell v. Frazier, 65 Kan. 24, 68 P. 1076 (1902); Trumbull v. Bombard, 171 App.Div. 700, 157 N.Y.S. 794 (1916); Gamble v. Garlock, 116 Minn. 59, 133 N.W. 175 (1911). The underlying reasoning of these cases is that a person who has only an option to purchase property but who has not exercised the option has no interest in the property, or in the insurance which insures the property absent a specific clause in an agreement between the parties.
Cases which have allowed the lessee to collect the insurance proceeds have found that the lessee implicitly exercised the option to purchase prior to the damage, Dolan v. Spencer, 92 Colo. 389, 21 P.2d 411 (1933); or that the nature of the contract between the parties required that the lessee who had not exercised the option nonetheless get the proceeds of the insurance policy, Williams v. Lilley, 67 Conn. 50, 34 A. 765 (1895); or that the parties had agreed that the insurance money was to be applied to reinstate the premises, Reynard v. Arnold, 10 L.Rep.Ch. 386 (1875); or that when the rent being paid by the lessee was being applied towards the purchase price and the rent paid had almost equalled the entire purchase price, the lessee was entitled to the insurance proceeds regardless of whether he had exercised the option prior to the fire damage, Nelson Properties, Inc. v. Denham, 123 Fla. 382, 167 So. 35 (1936).
The Iowa Supreme Court has used the theory of unjust enrichment to allow the person holding the unexercised option to collect the insurance proceeds when he exercises the option after damage is done. Gard v. Razanskas, 248 Iowa 1333, 85 N.W.2d 612 (1957).
In the ease at bar the relationship between the parties was that of lessor/lessee at the time the fire occurred. The contract of lease clearly provided that in the event the lessor failed to repair the premises within a certain time the lessee had the •option to terminate the lease and to vacate the premises without notice. Gayle was the owner/lessor at the time the damage occurred. If Cox had not exercised his option to purchase, there would be no question that Gayle would be entitled to the insurance proceeds since he suffered the loss as owner of the building. We do not see how the result can be different because Cox chose to exercise his option after the fire.
We certainly see how some equities fall on Cox’s side of the case. He is now owner of a piece of property for which he paid $20,000.00 but which is probably worth about $12,000.00 less than that amount. Cox, however, was under no obligation to exercise the option to purchase. His remedy under the agreement was to vacate the premises. While this may have been particularly difficult to do in light of the nature of Cox’s junk car business, it was nonetheless the remedy agreed upon by the parties in an arms-length transaction to which Cox consented. Our result might be different had Cox exercised the option prior to the fire, but this question is not before us.
We hold, therefore, that a party who exercises an option to purchase after the premises have been damaged by a cause resulting from the fault of neither of the parties is not entitled to the insurance proceeds absent a specific agreement to the contrary.
Therefore, for the above and foregoing reasons, the decision of the trial court is reversed, and the insurance proceeds are awarded to Lawson Gayle. The appellee, James P. Cox, is to pay all costs in the trial court as well as in this court.
REVERSED AND RENDERED.
PONDER, J., dissents and assigns reasons.
LEAR, J., dissents and joins in reasons by PONDER, J.

. This proceeding commenced as a suit to recover insurance proceeds. The insurance corn-pany answered the petition and converted the suit into a concursus proceeding.