Gary GRAVES, Appellant,

v.

Rick STANTON, Respondent.

No. 31911.

Missouri Court of Appeals,
Western District.

Sept. 1, 1981.

Glen A. Dietrich, Maryville, for appellant.

Roger M. Prokes, Maryville, for respondent.

Before KENNEDY, P. J., Wasserstrom, C. J., and Shangler, J.

KENNEDY, Presiding Judge.

The contest in the present case is between the lessor-seller of a mobile home (the appellant Graves) and the lessee-buyer (the respondent Stanton) under a "lease agreement with option to buy", over the insurance proceeds when the mobile home was destroyed by fire.

The trial court after a non-jury trial in a declaratory judgment case held that the respondent, Rick Stanton, was entitled thereto. The lessor-seller appealed.

The facts are as follows:

Appellant Gary Graves, along with his wife (who is a party to the case, although we refer to appellant in the singular), owned a 1969 Detroiter mobile home. They entered into a contract with respondent Rick Stanton, dated December 21, 1978, entitled "Lease Agreement with Option to Buy". The contract purported to lease the mobile home to respondent Stanton for $100 per month rent. Within one year Stanton would have the option to purchase the mobile home for $4,000, less any amount theretofore paid as rent. The contract provided that the lessee was to "provide lessor with proof of full insurance coverage immediately". The contract, which was written in longhand by Mrs. Graves, is set out in full in the margin.[1]

Respondent Stanton took possession of the trailer. It was located at Maryville, Missouri, when the contract was entered into, but was moved at respondent's expense to Pickering, Missouri. Respondent secured a policy of insurance with the Farmers Mutual Insurance Company of Nodaway County, insuring the mobile home for $7,000, and the household and personal effects for $3,000. Respondent Stanton paid the premium for one year, in the sum of $80. The named insured was Rickie Stanton, while Gary Graves was named as mortgagee. The policy was mailed to Graves. Graves complained to Stanton of Stanton's being the insured while he was

---

1. The contract in question reads as follows:

Lease Agreement with Option to Buy

    Lessor:    Gary A. Graves
    Lessee:    Rick Stanton
    Subject:   1969 Detroiter Mobile Home 12 x 60
    Date:     12–21–78

I, Gary Graves, Lessor, do agree to rent with option to buy to Rick Stanton, Lessee, according to the following terms.

1. Lessee agrees to pay $100 cleaning deposit.

2. Lessee agrees to provide Lessor with proof of full insurance coverage immediately.

3. Lessee agrees to pay $100 a month rent to be applied on purchase price at the time Lessee assumes full responsibility.

4. Lessee has a maximum of one year from date of this contract to secure loan and make full payment to Lessor at which time all rental payments will be deducted from purchase price of $4,000.00. Contract is null and void one year from date 12–21–78 a. m.

5. Rent in the amount of $100 is due on the first day of each month, until contract is either paid or void.

        Lessee:  Rickie Stanton
        Lessor:  Gary Graves

described as mortgagee, but did not pursue the complaint and it remained as it was. The designation of the parties on the insurance policy is not important in the case.

Respondent Stanton occupied the mobile home as his residence until November 5, 1979. He was in the process of moving out when the mobile home caught fire and burned. It was a "total loss", and the insurance company issued a check for $6,800 for the mobile home loss. The figure was arrived at by deducting from the $7,000 the sum of $100 deductible by the terms of the policy, and $100 for the frame and running gears of the mobile home which the insurance company claimed as salvage and sold back to Stanton. (Stanton used them to build a home-made trailer which he sold for $500.) The insurance proceeds check for $6,800, plus another $1,381 for the contents destroyed by the fire, were included in a single draft for $8,181, made payable to "Rickie Stanton and Gary Graves". The draft was dated November 16, 1979, and it was delivered to respondent Rickie Stanton.

Stanton shortly before the fire had indicated to Graves his desire to exercise the option and had discussed Graves's carrying the unpaid balance as a purchase money lien. That arrangement was still under consideration at the time of the fire. We take it from the evidence that Stanton's moving was no indication of any purpose to abandon the contract, and such a contention is not made here.

On December 3, 1979, Stanton wrote Graves a letter, advising him that he was exercising the option to purchase. The letter contained the following: "In exercising this option I will deliver to you a check in the amount of $2,800, a copy of which is attached hereto, on the condition that you deliver . . . to my order any insurance proceeds that you might have received or have an interest in from the insurance that was to be maintained on this mobile home.

"Upon your transferring to me the title to this mobile home and insurance for the damage this mobile home has sustained, I will immediately deliver to you the check referred to above in the amount of $2,800."

A photocopy of a check was attached to the letter, dated December 1, 1979, in the amount of $2,800, payable to the order of Gary Graves and signed by Rickie Stanton. It was not disputed that Stanton had paid $1,200 in rental payments and that the $2,800 represented the balance owing on the $4,000 purchase price. Neither is there any dispute that the attempted exercise of the option came within the one-year option period provided in the agreement between the parties. The parties do not explain how the $100 cleaning deposit has been treated by them.

Appellant Graves made no response to the letter, but on December 21, 1979, at the expiration of the option period, filed the present declaratory judgment action in which he claimed the proceeds of the mobile home insurance.

The trial court held and adjudged that respondent's attempted exercise of the option was effective, and that he was entitled to all of the insurance proceeds except the $2,800 still owing to Graves as the balance of the purchase price, and ordered the insurance proceeds so distributed.

Appellant Graves argues that the destruction of the mobile home voided the contract between himself and respondent under the doctrine of impossibility of performance or the doctrine of commercial frustration. Enlarging upon that argument, he says that the fire made it impossible for them to perform their contract, and therefore the contract was nullified. Says the appellant in his brief: "Accordingly, the doctrine of commercial frustration or the doctrine of impossibility of performance would operate to excuse any further performance by the parties once the fire occurred. Such application of the law would operate to avoid the Lease Agreement with Option to Buy between the parties, thus ending the lessor-lessee relationship, and the option to purchase of the Respondent lessee." Appellant cites the cases of *Howard v. Nicholson*, 556 S.W.2d 477 (Mo.App. 1977); *Ellis Gray Milling Company v. Sheppard*, 359 Mo. 505, 222 S.W.2d 742 (1949); *Missouri Public Service Company v. Pea-*

*body Coal Company*, 583 S.W.2d 721 (Mo. App.1979); and *Semo Grain Company v. Oliver Farms, Inc.*, 530 S.W.2d 256 (Mo.App. 1975). The court in *Howard v. Nicholson*, supra at 481–482 says: "Under the doctrine (of commercial frustration), if the happening of an event not foreseen by the parties and not caused by or under the control of either party has destroyed or nearly destroyed either the value of the performance or the object or purpose of the contract, then the parties are excused from further performance. The doctrine of commercial frustration is close to but distinct from the doctrine of impossibility of performance. Both concern the effect of supervening circumstances upon the rights and duties of the parties but in cases of commercial frustration, '[p]erformance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by a fortuitous event, which supervenes to cause an actual but not literal failure of consideration' (citation omitted)."

In addition to the common law doctrine enunciated by the above cases, appellant also points us to § 400.2–613(a), RSMo 1978, wherein the Uniform Commercial Code provides: "Where the contract requires for its performance goods identified when the contract is made, and the goods suffer casualty without fault of either party before the risk of loss passes to the buyer . . . (a) if the loss is total the contract is avoided.

■ This, however, is not a case of impossibility of performance or of commercial frustration. Those doctrines have no place here. The physical structure of the mobile home was not the whole and exclusive subject of the contract between the parties. The parties had contemplated the possibility of destruction by fire and had provided for that event by providing that insurance coverage was to be maintained by the buyer-lessee. The contract did not provide whom the insurance proceeds would be paid to. We may assume the parties had in mind that the insurance would protect both of them, and so would be payable to them as their respective interests might appear. *Carnation Lumber and Shingle Co. v. Tolt*

*Land Co.*, 103 Wash. 633, 175 P. 331, 334 (1918). The subject of the contract was therefore the mobile home or in case of its destruction by fire the proceeds of the insurance.

■ In *Williams v. Lilley*, 67 Conn. 50, 34 A. 765 (1895), the parties had contracted for a lease of certain property with an option in the lessee to buy for a certain price, the rental payments to be credited thereon. The contract provided for the lessee to maintain insurance on the property. The property was damaged by fire. A part of the insurance proceeds was used for repairs but a part remained unexpended. The lessee then exercised his option to buy. He was held to be entitled to the unexpended fund of insurance money. Said the court: *Id.* at 61, 34 A. at 768–769:

How, then, in the case as we are now supposing it to be, does the property so stand? A part of it remains in a damaged and ruinous condition. But the balance is represented by a sum of money received by the defendants, upon the adjustment of insurance, upon the basis of a just representative and equivalent for the loss. Why should not the two—the injured property and the sum received for the injury—stand together, and constitute together, in its present form, the estate contracted to be conveyed to the plaintiff, in the event of his exercise of his option? It seems to us that they should.

As it happened, the fire totally destroyed the mobile home (the parties make no point of the salvage value which remained, and treat the loss as total destruction), and so we deal with the total insurance proceeds in the place of the total mobile home. It might have happened that the mobile home was damaged to the extent of 10 percent of its value, and we would then be dealing with a res which consisted of 90 percent mobile home and 10 percent insurance proceeds—or the insurance money might have been used for repair of the structure and that would have been merged with it. As the court said in *Carnation Lumber and Shingle Co. v. Tolt Land Co.*, supra 175 P. at 334:

This is a suit in equity, and the only object we have is to compel the doing of such equity as grows out of the contract. The subject-matter of the sale was the land, the mills, and machinery. The policies were made out in the names of the several parties to this suit, and, if there were no other provision for the distribution of the insurance moneys, the laws would supply the words "as their interests may appear." It may be granted that the purchaser or the plaintiff would not be entitled to the insurance money if it had not exercised its option, but when it exercised its option it was entitled to the benefit of its bargain. That is to say, if the mills with the machinery, or if any of them, had been destroyed in whole or in part by fire, it is entitled to the insurance money; for equity will take no account of a change in form or character of property. This works complete equity between parties to this suit, for it gives to the purchaser his value in property, and, with the payment of the money into the registry of the court, the bank will satisfy the contract and give to the purchaser and the land company all that it demanded.

See Annot., 65 A.L.R.2d 989 (1959); Annot., 66 A.L.R. 864 (1930); Annot., 23 A.L.R. 1225 (1923); 77 Am.Jur.2d, *Vendor and Purchaser*, § 374 (1975).

■ Plaintiff Graves next says that defendant's attempt to exercise the option was ineffective because his tender was insufficient. We think, however, that the tender was sufficient. Plaintiff argues that in order to exercise his option, defendant must have tendered to him $2,800, the balance owing on the $4,000 purchase price, with no strings attached. Not so. A buyer may make his tender conditional upon the seller's simultaneous performance of his end of the agreement. He is not required to surrender his money on faith that the other fellow will perform. In this case, the tender was conditioned upon the seller's delivering the title to the mobile home and surrendering his claim upon the insurance proceeds. The buyer was entitled to the performance of those acts by the seller and

he could make his tender of the balance of the purchase price conditional upon that performance. *Carnation Lumber & Shingle Co. v. Tolt Land Co.*, supra 175 P. at 334; *Mitchell v. Philippi*, 359 Mo. 754, 223 S.W.2d 441, 445 [4] (Mo.1949).

The judgment of the trial court is affirmed.

All concur.