**G.M. BATTERY & BOAT COMPANY,**
Plaintiff–Amicus Curiae,

v.

**L.K.N. CORPORATION,**
Defendant–Cross–Claimant/Respondent,

St. Paul Fire & Marine Insurance Company, Defendant–Cross–Defendant/Appellant.

No. 69427.

Supreme Court of Missouri,
En Banc.

March 15, 1988.
Rehearing Denied April 19, 1988.

Laura B. Allen, Edward S. Meyer, St. Louis, for defendant-cross-appellant.

Richard Bumb, Michael J. McAvoy, Fenton, for defendant-cross-respondent.

Bryan L. Hettenbach, St. Louis, for plaintiff-amicus curiae.

BLACKMAR, Judge.

LKN Corporation (LKN) leased a commercial building from G.M. Battery and Boat Co. (GMB) for a term of two years commencing March 1, 1982 at a rental of $1,500 per month. The lease granted the lessee an option to purchase the property during the term for $145,000 with a credit on the purchase price of one-half of the rental paid during the second year. The lease also contained the following provision:

No. 11. *Insurance.* Tenant agrees to maintain at his expense throughout the term of this Lease an all hazard insurance policy in the amount of $75,000.00 payable to and acceptable to Landlord.

Tenant further agrees to deliver to the landlord a certificate of the insuring company certifying that such insurance is in full force and effect. (L.F. 195–196).

LKN did not obtain an insurance policy which complied with the requirements of the lease. It instead purchased a policy from St. Paul Fire and Marine Insurance Co., effective June 1, 1983,[1] covering the building on the leased premises for $125,-000 and the contents for $70,000. GMB was not named as a loss payee under this policy, but Mark Twain State Bank, which had lent money secured by inventory, was so named.

On August 23, 1983, the building and contents were totally destroyed by fire. GMB collected $75,000 on a policy which it had obtained on the building from an insurer other than St. Paul. St. Paul denied liability for any part of the building loss, claiming that LKN had no insurable interest in the building. It admitted liability for the contents coverage, subject to determination of the proper claimant, and for business interruption, to the extent that loss could be proved. These latter coverages are not in issue in this phase of the litigation.

GMB filed suit against LKN, St. Paul, and others. It sought $75,000 in damages from LKN for breach of the lease contract in failing to procure insurance on the building. LKN cross-claimed against St. Paul for the entire proceeds of its policy. St. Paul paid the $70,000 contents coverage into court, seeking to interplead possible claimants, and filed an answer denying liability on the building coverage because of LKN's lack of insurable interest. Other claims in the somewhat complicated litiga-

tion are not material to this appeal and need not be discussed.

The trial court entered summary judgment for GMB against LKN for $75,000 for failure to provide insurance, and for LKN against St. Paul for $125,000, this being the entire building coverage under its policy. Both of these judgments were declared to be final and appealable as authorized by Rule 81.06. St. Paul appealed, but LKN did not. The court of appeals reversed, finding that LKN did not have an insurable interest in the building. We granted transfer to consider possible conflict with *DeWitt v. American Family Insurance Co.,* 667 S.W.2d 700 (Mo. banc 1984). Taking the case as on initial appeal, we conclude that *DeWitt* indeed states the proper rule of decision and affirm the judgment of the circuit court. The case comes to the writer on recent reassignment.

St. Paul urges a single point for reversal, as follows:

THE TRIAL COURT ERRED IN FINDING THAT THE LESSEE L.K.N. CORP. WAS ENTITLED TO THE PROCEEDS OF THE INSURANCE FOR THE BUILDING FOR THE REASON THAT THE LESSEE WITH ONLY AN UNEXERCISED OPTION TO PURCHASE HAD NO INSURABLE INTEREST IN THE PLAINTIFF OWNER'S BUILDING SUCH THAT IT COULD OBTAIN COVERAGE FOR THE BUILDING AS THE NAMED INSURED.

The appellant cites several cases from other jurisdictions in support of its legal proposition.[2] Our examination of the cases persuades us that there is no general rule such as St. Paul advances. Substantial authority supports a contrary position.[3] A

---

1. There were apparently earlier policies with other insurers.

2. *The Travelers Indemnity Co. v. Duffy's Little Tavern, Inc.,* 478 So.2d 1095 (Fla.App.1985) *app. denied* 488 So.2d 68 (Fla.1986); *Vendriesco v. Aetna Casualty & Surety Co.,* 68 A.D.2d 946, 414 N.Y.S.2d 64 (1979); *Strong v. Moore,* 105 Or. 12, 207 P. 179 (1922) (superseded by statute as stated in *Glassner v. Northwest Lustre Craft,* 39 Or.App. 175, 591 P.2d 419 (1979); *Gamble v. Garlock,* 116 Minn. 59, 133 N.W. 175 (1911);

*Trumbull v. Bombard,* 171 A.D. 700, 157 N.Y.S. 794 (1916)).

3. *See, e.g., California Food Service Corp. Inc. v. Great American Ins. Co.,* 130 Cal.App.3d 892, 182 Cal.Rptr. 67 (1982) (sublessee of building who assumed lessee's contractual obligation to obtain fire insurance for the owner's benefit had an insurable interest in the building); *Commercial Union Assurance Co. v. Jass,* 36 F.2d 9 (5th Cir.1929), *cert. denied,* 281 U.S. 758, 50 S.Ct. 410, 74 L.Ed. 1168 (1930) (tenant's lease was terminable at the option of lessor on 60 days'

strong case is *Crossman v. American Insurance Co.*, 164 N.W. 428 (Mich.1917), which states emphatically that there is no reason why an optionholder should not be deemed to have an insurable interest. But we see no reason to dwell upon the facts of the several cases from other jurisdictions. We conclude that the trial court's judgment is supported by the consistent holdings of the Missouri cases over many years.

■ The controlling rule, perhaps borrowed from elsewhere, but expounded in numerous Missouri cases,[4] is as follows:

> In general, a person has an insurable interest in the subject matter insured where he has such a relation or concern in such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by happening of the event insured against.

The substance of this rule, interestingly, is set out in *Crossman v. American Insurance Co., supra,* 164 N.W. at 429. It was emphatically applied in *DeWitt, supra,* which is the latest pronouncement of our Court on the subject of insurable interest in property. In *DeWitt* a husband and wife held real property which was awarded to the husband on dissolution of their marriage. The husband then died and his former wife took possession of the property, which she used to make a home for herself and a child of the marriage. She insured the property against fire in her own name. We held that, inasmuch as she was liable on the note secured by a deed of trust on the property, she had an insurable interest in spite of her lack of title, and that, when

the property was totally destroyed, she was entitled to recover the entire face amount of the policy.

In *Wrausmann v. Kansas City Fire and Marine Insurance Co.*, 477 S.W.2d 741 (Mo.App.1972), a person liable on a mortgage note, apparently as a "straw party," was held to have an insurable interest in property. A familiar quotation used by the court, reading as follows, is pertinent:

> It is not necessary, to constitute an insurable interest, that the interest would be such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence ... although a person has no title, legal or equitable, in the property, and neither possession nor a right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debtor obligation for which he is secondarily liable.

■ *Graves v. Stanton*, 621 S.W.2d 524 (Mo.App.1981), involved an insurance policy taken out by the lessee of a trailer. The lessee had an option to purchase, with rental payments to be credited on the option price, and was required by the lease to maintain insurance on the trailer. The court found that the lessee had an insurable interest. St. Paul seeks to distinguish this case on the ground that the lessee had given notice of his intention to exercise the option before the trailer was destroyed. The attempted distinction is not total, for by established law an insurable interest must exist both when the insurance is written and at the time of the loss.[5] The case

---

notice. The court stated, "Undoubtedly appellees had an insurable interest in the property. If that be reduced to a minimum of 60 days' use of the building it would be enough. Any interest in property, legal or equitable, however slight, is insurable...." More recently, a Louisiana court has gone so far as to say that mere expectation of occupancy may create an insurable interest). *Young v. State Farm Fire & Casualty Ins.*, 426 So.2d 636 (La.App.1983), *cert. denied*, 433 So.2d 148 (La.1983).

One Florida case has even held that gratuitous use of property may establish an insurable interest. *Sun State Roofing Co. v. Cotton States Mutual Ins. Co.*, 400 So.2d 842 (Fla.App.1981).

4. *See, e.g., Wrausmann v. Kansas City Fire and Marine Ins. Co.*, 477 S.W.2d 741, 743 (Mo.App. 1972), (contingent liability of party executing note); *American Central Insurance Co. v. Kirby*, 294 S.W.2d 556, 561 (Mo.App.1956); 44 C.J.S. Insurance, Sec. 175; *Harrison v. Fortlage*, 161 U.S. 57, 65, 16 S.Ct. 488, 490, 40 L.Ed. 616 (1896).

5. *Estes v. Great American Insurance Co.*, 112 S.W.2d 153 (Mo.App.1938); *Galati v. New Amsterdam Casualty Co.*, 381 S.W.2d 5 (Mo.App. 1964); *White v. Merchants Ins. Co.*, 93 Mo.App. 282 (1903).

is inconsistent with the existence of any categorical rule in Missouri that the holder of an unexercised option does not have an insurable interest. The optionholder has an insurable interest if there is potential for loss in the destruction of the subject property.

Other Missouri cases are consistent with our conclusion. In *Farmers Mutual Fire & Lightning Co. v. Crowley*, 354 Mo. 649, 190 S.W.2d 250 (1945), the court held that a life tenant could insure property for its full value and could collect the entire proceeds to the exclusion of the remainderman if there is a total loss. A holding of the court of appeals that the insurance would redound to the benefit of the remainderman, 187 S.W.2d 346 (Mo.App.1945), was expressly rejected. In *M.F.A. Mutual Insurance Co. v. Gulf Insurance Co.*, 445 S.W. 2d 829 (Mo.1969), we held that a building contractor had an insurable interest in an uncompleted house which he was required by contract to complete. The material circumstance in determining insurable interest is not title, but possibility of loss. Our courts make every effort to find insurable interest, and to sustain coverage, when there is any substantial possibility that the insured will suffer loss from the destruction of the property. Other supporting cases are cited in *DeWitt*.

St. Paul cites *Puritan Insurance Co. v. Yarber*, 723 S.W.2d 98 (Mo.App.1987). This is the most recent of a line of court of appeals cases holding that nobody but the holder of a certificate of title (or, no doubt, a duly endorsed lienholder) has an insurable interest in a motor vehicle.[6] The result is deemed necessary by reason of § 301.210, RSMo 1986, which establishes a strong policy against informal transfers of title to motor vehicles and provides that any attempted transfer is void unless accompanied by delivery of a duly endorsed certificate of title. Policy reasons attend the titling of motor vehicles which are not present when the insurance covers real property.

Likewise distinguishable is *Lumberman's Mutual Insurance Co. v. Edmister*, 412 F.2d 351 (8th Cir.1969), applying Missouri law. There the owner of real property sold the property but maintained the existing insurance in force in his own name. He then sought to collect the proceeds when the property was destroyed by fire. The court found that he had misled the insurance company as to the state of his title. This finding is sufficient to support the denial of recovery.

■ Here it is patent that LKN could suffer loss if the building on the leased premises were destroyed. It had bound itself to furnish insurance payable to GMB, and has actually been held to pay damages for the breach of this covenant. There is no reason why its failure of literal compliance with the lease term should redound to the benefit of St. Paul, by relieving it of a liability which it voluntarily assumed for a loss actually suffered by its insured. LKN also stood to lose the remaining six months of the term of its lease, as well as the utility of the option and the rent credit on the option price. These very real possibilities for loss establish LKN's insurable interest.

■ Inasmuch as insurable interest is manifest, LKN is entitled to recover the full face amount of the policy for the total loss. The insurer makes no claim of depreciation, and so full recovery is mandated by Section 379.140, RSMo 1986,[7] which places

---

**6.** *See, e.g., Moore v. State Farm Insurance Co.,* 381 S.W.2d 161 (Mo.App.1964); *Galati v. New Amsterdam Casualty Co.,* 381 S.W.2d 5 (Mo.App. 1964); *Faygal v. Shelter Insurance Co.,* 689 S.W. 2d 724 (Mo.App.1985).

**7.** The statute reads as follows:
  In all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant; and in case of partial loss, the measure

the risk of overinsurance on the insurer rather than on the insured. The insurer may protect itself by strictly defining the interest covered by its policy, or by obtaining representations or warranties about the state of the title, if it deems this information important. What it cannot do is to issue a policy, collect the premiums, and then argue that the value of the insured's insurable interest in the property is less than the coverage it underwrites. *See DeWitt v. American Family Insurance Co., supra; Farmers Mutual Fire & Lighting Co. v. Crowley, supra.*[8]

Inasmuch as we reject the only point urged by St. Paul for reversal, the judgment appealed from is affirmed and the case is remanded for further proceedings not inconsistent with this opinion.

BILLINGS, C.J., and ROBERTSON, RENDLEN and HIGGINS, JJ., concur.

DONNELLY, J., dissents.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent. The principal opinion abandons the most fundamental concept of fire and hazard insurance law which is that

> [a]s a prerequisite to the enforcement of an insurance contract, public policy demands that the insured have an insurable interest in the property both at the time of making the contract and at the time of loss. *Prewitt v. Continental Insurance Co.,* 538 S.W.2d 902, 905 (Mo.App.1976); *Galati v. New Amsterdam Casualty Co.,* 381 S.W.2d 5, 9 (Mo.App.1964); *Estes v. Great American Insurance Co.,*d 112 S.W.2d 153, 156 (Mo.App.1938). The requirement of insurable interest is necessary to prevent wagering under the guise of insurance and temptation to de-

stroy the insured property. *See* B. Harnett & J. Thornton, *Insurable Interest In Property: A Socio–Economic Reevaluation of a Legal Concept,* 48 Colum.L.Rev. 1162, 1178–83 (1942).

*DeWitt v. American Fam. Mut. Ins. Co.,* 667 S.W.2d 700, 704 (Mo.banc 1984).

Today, this Court permits a lessee with an unexercised option to purchase property to insure the property for $125,000, and to collect the face amount of the policy, even though "GMB [lessor-owner of the property] collected $75,000 on a policy which it had obtained on the building from an insuror other than St. Paul." *G.M. Battery & Boat Co., v. L.K.N. Corporation,* 747 S.W. 2d 624, 625 (Mo.banc 1988). This is judicial approval of gambling in the rankest form. In addition, it is a judicial invitation to arson.

The principal opinion apparently finds the insurable interest to be the loss L.K.N. could suffer by the fire, the damages suffered by reason of its breach of its covenant "to furnish insurance payable to GMB [lessor]" and its loss of "the remaining six months of the term of its lease." *G.M. Battery,* 747 S.W.2d at 627.

The principal opinion apparently ignores the exclusion of liability contractually incurred, Exhibit B, and the fact the lessee L.K.N. purchased business interruption insurance which is not contested and will be paid by St. Paul. The principal opinion seems to ignore the provision of the Standard Fire Policy Supplement, relating to "Pro rate liability", Exhibit B, Legal File page 178, line 86–89, which provides:

> The company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

*Tavern,* 478 So.2d 1095 (Fla.App.1985), strongly relied on by St. Paul. There the court said, "the public policy of Florida prohibits recovery of insurance proceeds in excess of one's insurable interst." By reason of § 379.140, this statement is not an accurate statement of Missouri policy.

---

of damage shall be that portion of the value of the whole property insured, ascertained in the manner prescribed in this chapter, which the part injured or destroyed bears to the whole property insured.

8. The valued policy statute demonstrates a vital distinction between this case and *Duffy's Little*

By permitting recovery of the face amount of this policy and $75,000 on the other policy, or a total of $200,000 on a $145,000 property, the principal opinion would convert the valued policy statute, § 379.140, RSMo 1986, into an instrumentality for approving gambling, rather than an instrumentality for equitable justice.

In order to enforce an insurance contract in Missouri, it has always been the law that the insured must have an insurable interest in the property as was so clearly stated in *DeWitt* and *Puritan Insurance Co. v. Yarber*, 723 S.W.2d 98, 100 (Mo.App.1987), quoting *Lumberman's Mutual Insurance Company v. Edmister*, 412 F.2d 351, 353 (8th Cir.1969).

In this case the subject matter of the insurance contract is the building leased by respondent. The insurance policy provided coverage for the named insured's "financial interest in the insured building or structure ..." Respondent claims that as a lessee with an exclusive option to purchase, it has a financial interest in the building.

Respondent relies on *Graves v. Stanton*, 621 S.W.2d 524 (Mo.App.1981) and *Kelly v. Iowa Valley Mutual Assurance Company, Inc.*, 332 N.W.2d 330 (Iowa 1983). These cases both find that a lessee with an exercised option to purchase may collect the insurance proceeds.

Here, respondent did not give the required written notice necessary to exercise the option. In order to exercise the option, the lease said: "Tenant may exercise his option by giving written notice of such election to Landlord at least thirty (30) days prior to date upon which tenant desires to close transaction." Respondent did not comply with this provision.

The cases relied on by respondent do not reach the issue of whether an unexercised option to purchase is an insurable interest.

An option itself is at most a contract but does not itself transfer an interest or title in land. *Farmer v. Littlefield*, 355 Mo. 243, 195 S.W.2d 657 (1946). Respondent

had a contract only. Respondent had neither an interest nor title in the building.

I recognize that *DeWitt*, 667 S.W.2d 700, 705 (Mo.banc 1984) states that the issue is not what the insured's title is to the property, but rather, if the insured will suffer pecuniary damage by its loss. In *DeWitt*, plaintiff recovered the total insurance proceeds based on her personal liability on the house mortgage. I believe that the result reached in *DeWitt* is correct. I would decline to broaden *DeWitt*.

"An option is only a continuing offer, or at most an unilateral contract, whereby the owner of land agrees with another person that the latter shall have the privilege of buying the property, upon certain terms, within a specified time. It imposes no obligation to purchase upon the optionee." *Fisher v. Lavelock*, 282 S.W.2d 557 (Mo. 1955).

Allowing respondent as optionee with no obligation to exercise the option and purchase the building to recover the value of the building when it was destroyed, would be to allow wagering under the guise of insurance. *DeWitt*, 667 S.W.2d at 704. Respondent's only interest is limited to that of a lessee. A lessee's rights do not rise to the same interest as an owner. *Puritan Insurance Co. v. Yarber*, 723 S.W.2d 98, 101 (Mo.App.1987).

The landlord elected to cancel the lease after the fire. Respondent had no financial interest in the building or structure, as its total destruction operated to terminate the lessee's rights and obligations under the lease.[1]

Respondent does not stand to gain a pecuniary benefit or suffer a pecuniary loss by reason of the fire. Respondent as a lessee with an unexercised option to purchase the building, has no insurable interest in the building itself. Courts in other jurisdictions have reached a similar conclusion when confronted with the question of the insurable interest of a lessee with an unexercised option to purchase. *See, e.g.,*

---

1. Appellant does not dispute that lessee does have an insurable interest in business interruption and the contents of the building.

**630**

*The Travelers Indemnity Co. v. Duffy's Little Tavern, Inc.,* 478 So.2d 1095 (Fla. App.1985), *app. denied,* 488 So.2d 68 (Fla. 1986); *Vendriesco v. Aetna Casualty & Surety Co.,* 68 A.D.2d 946, 414 N.Y.S.2d 64 (1979); *Gamble v. Garlock,* 116 Minn. 59, 133 N.W. 175 (1911).

The judgment of the trial court should be reversed.